J. C. LEAGUE v. F. M. TREPAGNIER.

Delivered May 10, 1896.

**1.  Practice on Appeal—Reversal—Judgment Against Weight of Evidence.**
  While an appellate court will not reverse a judgment where there is evidence to support it unless it is clearly wrong, it is not only the province, but it is the imperative duty, of such court to reverse a judgment which is manifestly against the weight of the evidence.

**2.  Trespass to try Title—Insufficient Proof.**
  The contradicted and almost uncorroborated evidence of a witness who, if his testimony be true, was guilty of a fraud in having the land in controversy conveyed as a gift by him to his minor son (the plaintiff) and afterwards selling it, using his son's name as his own, will not, after the lapse of twenty years, sustain a judgment for the land against subsequent and innocent purchasers thereof.

APPEAL from Calhoun.    Tried below before Hon. S. F. GRIMES.

*E. P. Hamblen,* for appellant.

*W. C. Oliver,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—On the 21st of August, 1893, appellee filed suit in the District Court of Harris County, to recover of appellant the property in controversy, a lot in the city of Houston.    The action was in the form of trespass to try title.    Defendant pleaded not guilty, and specially, that he held the land under regular chain of title from F. M. Trepagnier; that he deraigns title to the premises sued for through sale thereof, made under a deed of trust executed by F. M. Trepagnier, the same man who bought the property and paid for it, and afterwards executed the deed of trust in the same name as the one in which he purchased the property; that the person who so purchased the property, and who afterwards executed the said deed of trust, was known as F. M. Trepagnier, and did business by that name, and was the owner of said property when he executed the deed of trust under and by virtue of which defendant, under regular chain of transfers, is now the owner of said premises; but that appellant claims the same and is asserting title thereto, which claim is a cloud upon defendant's title; and by way of reconvention, defendant prays for judgment against plaintiff, and for a decree establishing his title thereto.    Upon trial of the cause by the judge of the court without the intervention of a jury, judgment was rendered for the plaintiff, and defendant has appealed to this court; and the question submitted under the assignments for our determination is: does the evidence authorize the judgment decreeing the land to the plaintiff.

There are no conclusions of law or fact of the judge in the record. Both parties claim title from a common source, and it is admitted that there is a regular chain of title from the trustee of the deed of trust, executed in the name of F. M. Trepagnier to J. Waldo, in 1872, down to

appellant, and that the considerations expressed in the several deeds constituting said chain of title were paid as declared in said deeds. In the year 1871, on March the 10th, J. E. Foster sold the land in controversy for the consideration of $156.25 to the man who testifies in this case that his name is now, and always has been, J. F. B. Trepagnier; that, in consideration of the payment of said sum, Foster on same day conveyed the land by deed to F. M. Trepagnier, and delivered same to the person buying the property and paying the consideration. On December 23, 1872, this same man who had bought the land from Foster borrowed from the Railroad, Real Estate, Building and Saving Institution one hundred dollars, giving his note therefor in the name of F. M. Trepagnier, and executing in the same name, at the time he borrowed the money, a deed of conveyance to said land to one J. Waldo, in trust to secure the payment of said money borrowed as aforesaid, and with power of sale; that at the time he borrowed said money, and for some time prior thereto, this same man kept a bank account with the same institution from which he borrowed the money, and which account was kept in the name of F. M. Trepagnier; the deposits were made in that name and checked out in that name, and the deed of trust was duly acknowledged by him. He negotiated the loan with the cashier of the bank, claiming to own the land; the officers of the bank all believed him to be the owner of the land, and did not know of the existence of the plaintiff. This man was a barber for several years in Houston before the purchase of the land, and he was called "Frank," and he was also called "Trip." Trip is a contraction of his surname. Frank, it is admitted, is a part of his Christian name. The land was repeatedly sold, after the sale by Waldo in execution of the power given him, without objection or claim of title by any one. None of the purchasers ever heard of plaintiff's claim until the institution of this suit.

The man who bought the land and received the deed from Foster claimed to be the owner of the land prior to the sale under the deed of trust given by him; he did not at the time of the purchase direct the conveyance to be made to the plaintiff, nor intimate to any one prior to the sale under the deed of trust that he purchased the land for the plaintiff. The plaintiff is the son of a woman who was the former slave and concubine of one John Iiams, late of Houston, and now deceased, and his reputed father is the man who bought the land from Foster. The year in which plaintiff was born is not definitely shown by the evidence, nor is it shown when he was christened Frank M. Trepagnier. His mother was living with Iiams at the time of his birth. She could not say when plaintiff was born. She had four children by Iiams, and two by the man who purchased the land in controversy of Foster; the plaintiff was one of these two. The reputed father could not tell when plaintiff was born, but thought, at the time of the trial, in the spring of 1895, that plaintiff was about twenty-five years old; knew that he was born at the time of the purchase of the land from Foster; he was then a small baby. This witness admits he borrowed the money from the bank and

executed the deed of trust in the name of F. M. Trepagnier, but denies that that was ever his name, and denies that he was known by that name, and avers that his name is J. B. F. Trepagnier; says that he thought he had the right to use the plaintiff's name in borrowing the money, and in executing the deed of trust; does not deny that he kept his bank account in the name of F. M. Trepagnier, but does not remember telling any one that he owned the land.   There is some evidence in the record besides his own testimony that this witness' name is what he avers it to be; the mother of plaintiff testifies that the plaintiff's father's name is J. B. F. Trepagnier.   Another witness, who was at one time a partner of plaintiff's reputed father, testifies that he did not know certainly what his name was; that he was sometimes called Frank, and sometimes Trip, but that in their partnership transactions he signed his name J. B. F. Trepagnier.   The plaintiff, as did his mother, testified that his age could be shown by Iiams' bible; and the court requested the plaintiff to produce the bible in court, but this request was not complied with, and in explanation of the failure of plaintiff to produce the book, plaintiff, by his counsel, informed the court that, upon inspection of the bible, it was discovered that the leaf containing the record of plaintiff's birth had been torn out and was lost.

We have, in the foregoing statement, recited every material fact which, in our judgment, is established indisputably by the evidence, and also every fact material put in evidence, whether so established or not; and we are of the opinion that the evidence does not warrant the judgment rendered for the plaintiff.   To sustain his claim the plaintiff must establish by a preponderance of the evidence this proposition: that the property in controversy was not purchased by plaintiff's father, and the conveyance made to the father in the father's name; but that the purchase was made by the father for the plaintiff, and with the intent and purpose to invest the title to the property, both legal and beneficial, in the plaintiff; and in pursuance of such purpose and intent the deed of conveyance from the vendor was executed to plaintiff.   The evidence in support of this proposition furnished by the record consists solely of the testimony of the reputed father, uncorroborated save by the testimony of the plaintiff's mother, to the effect, "that plaintiff's father told her, when plaintiff was a baby, he was going to buy the property for the baby, but she did not know whether he did so or not."

In support of defendant's title are these indisputable facts: that the father of plaintiff, before and at the time he executed the deed of trust under which defendant deraigns title, kept his bank account in the name of F. M. Trepagnier; that he borrowed money from the bank in that name, and in that name he executed the deed in trust and acknowledged the same before the proper officer for registration; and there is not the slightest evidence in the record that the father was ever heard to declare that the land was bought by him for the plaintiff until he gave his testimony in this case, over twenty years after the purchase was made by him, and after the land had been sold again and again, the

purchaser at each sale paying a valuable consideration and without knowledge or even suspicion, on the part of any of the purchasers, that the property was claimed by the plaintiff or by any one for him. The attitude of this witness before the court is such, that we do not think his testimony a sufficient basis for the judgment rendered for the appellee. If the witness, as he testified he did, purchased the property in controversy in 1877 from J. G. Foster, and had the same conveyed to the plaintiff with the intent to invest in him both the legal and beneficial title, be true, then he perpetrated a deliberate fraud when, in 1872, he executed the deed in trust to J. Waldo to secure the payment of the money borrowed of the beneficiary of the deed in trust. Such testimony is unworthy of credence. This court is of the opinion that the weight of the evidence is against the proposition that the land was bought and paid for by plaintiff's reputed father, and the deed of conveyance taken in the name of plaintiff with the intent to invest him with absolute title, legal and beneficial, to the property. The fact that plaintiff's father went by the name of Frank, and that Frank, as he admits, is part of his name, that he kept his bank account in the name of F. M. Trepagnier, and that he executed his note to the bank in that name in December, 1872, for money borrowed and to secure the payment of which he executed the deed of trust, and acknowledged the same for registration in the same name in which he purchased the property, and the failure by him, at the time of the purchase, or at any subsequent time, so far as the record discloses, to declare that the property was purchased for the plaintiff, outweigh, in our judgment, the declaration, made upon the witness stand over twenty years after the purchase, that he was never known by the name of F. M. Trepagnier, and that the property was not purchased for himself, but for the plaintiff. While an appellate court will not reverse a judgment where there is evidence to support it, unless it is clearly wrong, it is not only the province but it is the imperative duty of such court to reverse a judgment, which is manifestly against the weight of the evidence. Willis v. Lewis, 28 Texas, 185; Railway v. Somers, 78 Texas, 439. In a case like this—a contest over property—both parties claiming from the same party, the plaintiff as a donee and the defendant as an innocent purchaser, to authorize a divestiture of the title of the latter, the plaintiff must prove his title to be paramount by a preponderance of the evidence.

The judgment in our opinion not being supported by the weight of the evidence, is reversed; and this court, proceeding to render the judgment which should have been rendered by the trial court, adjudges and decrees that the plaintiff take nothing by his suit, and that the defendant recover his costs, both in this court and in the lower court.

*Reversed and rendered.*