STATE ex rel. SUTHERLAND v. PEASE.

(Court of Civil Appeals of Texas. San Antonio. April 10, 1912. On Motion for Rehearing, May 29, 1912.)

1. TRIAL (§ 390*)—REVIEW—FINDINGS OF FACT—TIME TO FILE.

Where the time for filing findings of fact had expired and the appeal was perfected, the trial court had no authority to file additional findings of fact; and the same could not be considered on appeal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 913; Dec. Dig. § 390.*]

2. QUO WARRANTO (§ 60*)—PLEADING AND RELIEF—ELECTION CONTEST.

Where, in quo warranto to oust defendant from the office of mayor of a city and place relator therein, the pleading did not allege the invalidity of the election, but claimed fraud in conducting it, allegations in the petition, attacking the validity of the election on the ground of the refusal of defendant and his officers of election to allow supervisors appointed by the city council to serve, were immaterial; and the court could not declare the election void, though there was fraud in the holding of it.

[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 71; Dec. Dig. § 60.*]

3. TRIAL (§ 387*)—TRIAL BY COURT—DETERMINATION OF ALL ISSUES.

Where a cause is tried by the court, without a jury, a party has the right to have every issue considered, and where material issues are not considered the judgment must be reversed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 903–907; Dec. Dig. § 387.*]

4. QUO WARRANTO (§ 58*)—DETERMINATION OF ALL ISSUES.

Where, in quo warranto to oust defendant from the office of mayor of a city and place relator therein, the petition alleged fraud in the election, consisting of election officers falsely marking the ballots of illiterate voters contrary to their instructions, and the evidence sustained the allegation, the court merely passing on the qualifications of voters and finding the number of votes cast, as they appeared in the ballot boxes, did not determine the material issues; and a judgment for defendant must be reversed.

[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 69; Dec. Dig. § 58.*]

5. QUO WARRANTO (§ 54*)—PETITION—EVIDENCE.

A petition in quo warranto to oust defendant from the office of mayor of a city and place relator therein, which alleges that in a voting precinct there were 205 and more votes cast for relator, that voters named cast such votes, that a specified number and more of said votes were by a judge of the election falsely marked, in violation of the instructions of the voters, who were illiterate, and who had given instructions to have their ballots cast for relator, while they were marked for defendant and counted for him, states a cause of action; and evidence of the names of the voters whose ballots had been fraudulently marked, so as to render ineffective their desires, is admissible.

[Ed. Note.—For other cases, see Quo Warranto, Cent. Dig. § 61; Dec. Dig. § 54.*]

6. ELECTIONS (§ 84*) — VOTERS — QUALIFICATIONS—ILLITERACY.

Illiteracy is not a cause for disqualification of voters; but there must be an honest compliance with the statute in marking their ballots, so as to give effect to their desires.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 84.*]

On Motion for Rehearing.

7. APPEAL AND ERROR (§ 1010*)—JUDGMENT —ISSUES.

Where a judgment is wrong, and the evidence on vital points has been ignored by the trial court, the court on appeal must set aside the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Quo warranto by the state, on the relation of H. R. Sutherland, against Clark Pease. From a judgment for defendant, relator appeals. Reversed and remanded.

John I. Kleiber, of Brownsville, Pope & Taylor, D. McNeill Turner, Russell Savage, and H. R. Sutherland, all of Corpus Christi, and Dougherty & Dougherty, of Beeville, for appellant. J. C. Scott, G. R. Scott, and Boone & Pope, all of Corpus Christi, for appellee.

FLY, J. This is a quo warranto instituted by the state of Texas, through its district attorney, John I. Kleiber, upon the relation of H. R. Sutherland, to oust the appellee, Clark Pease, from the office of mayor of the city of Corpus Christi, and place relator therein. A trial resulted in a judgment in favor of appellee.

The trial judge filed his conclusions of fact, in which he found that the official returns of the election held for city officers on April 4, 1912, showed that Clark Pease received, for the office of mayor, a total of 548 votes, and H. R. Sutherland 338 votes, but that the actual count of the ballots by the judge showed that Pease received 445 votes and Sutherland 420 votes, thereby giving a majority of 25 votes for appellee, and he declared him elected.

[1] The term of the court, at which this cause was tried, adjourned on August 12, 1911, and the findings of fact were filed on August 19th; but on October 7, 1911, nearly two months after the adjournment of the court, a paper, denominated "Additional Findings of Fact," was filed upon the order of the trial judge. There is no warrant of law for filing the additional findings of fact at the time they were filed. The time had expired and the appeal was perfected at that time; and the district judge had no authority to file the findings of fact. They cannot be considered in this case.

[2] The action in this case is for the office of mayor, there being no pleadings attacking the election as being illegal and void; and we fail to see the force and materiality of those parts of appellant's brief attacking the action of appellee; or his officers of election, in refusing to allow supervisors appointed by the city council to serve. The refusal to allow the supervisors to serve might, in a proceeding to set aside the election, have pro-

bative force; but we fail to see the pertinency of an attack on the validity of an election in an action brought to recover an office which is alleged to belong to relator by virtue of the same election. The inconsistency of the claim is apparent. This will dispose of all assignments of error attacking the validity of the election. The pleadings do not allege an invalid election, but claim that relator was elected to an office of which he has been unjustly deprived, and which he seeks to recover. In this class of cases, the allegata and probata, as in other cases, must correspond. This would apply, not only to the election over the whole city, but as well to a certain precinct. Under the pleadings in the case, the court had no authority to declare the election void, although it may have been reeking with fraud and corruption.

[3, 4] The following is found in the petition: "Plaintiff further alleges that in voting precinct No. 3 there were two hundred and five (205) and more votes cast for him, said plaintiff, the following qualified voters casting said two hundred and five (205) votes: [Here follow names which are omitted.]—and that twenty-six (26) and more of said votes were by one of the judges of said election falsely and wrongfully scratched by said judge of election, who was, at the time of said wrongful and unlawful action in casting said twenty-six (26) and more votes which he was instructed by illiterate voters to cast for plaintiff, and did, contrary to instructions, cast for defendant, while acting as a judge of said election, openly and notoriously, and in violation of law, electioneering for the defendant, and fraudulently marking ballots of voters for the defendant, when he had been instructed by said voters to mark them for plaintiff, and that twenty-six (26) and more of said bollots in said precinct No. 3 cast for plaintiff were fraudulently counted by said judges of election for the defendant. · Plaintiff further alleges that, although the returns of said election show that defendant was elected by a majority· of two hundred and ten (210) votes, that in fact and in truth plaintiff was elected by a majority of twelve (12) and more votes, and that by reason of the premeditated design and unlawful misconduct of the officers of said election at said precincts No. 2 and No. 3 of said city of Corpus Christi, Texas, and because of the miscounting of votes, as aforesaid, said returns did not in fact show the actual number of votes cast in said election for the relator or for the defendant, and ought not to be considered in estimating the vote cast in said election."

There was abundant evidence to sustain those allegations; but, without making any finding as to that material issue, the court found that "from an actual count of the ballots cast at said election, as taken from the ballot boxes," the following ballots were cast for relator and ·respondent in voting precinct No. 3: For the relator, H. R. Sutherland, 179 votes; for the respondent, Clark Pease, 203 votes. After passing upon the qualifications of several voters in precinct No. 3, the court found that relator had received therein 177 votes and respondent 202 votes. No finding was made as to the fraudulent scratching of the ballots of illiterate voters, most of which was shown to have done by one R. P. Blucher, since indicted for his acts in connection with the election now under consideration. There was proof strongly tending to show that a number of the voters were fraudulently deprived of their votes by an officer of the election erasing names, other than those desired by the voters to be erased; and, although this was the main, the most vital, point in the case, the court in his findings ignored it, and appellant has just cause to complain that the judge has found as he did in regard to the votes of precinct No. 3. The only matters passed upon are set out clearly in the findings of fact, and the most material issue is altogether ignored. If the case had been tried by jury, appellant had the right to have every issue submitted, and on a trial by a judge he has the right to have every material issue considered; and where it is apparent that they were not considered a reversal should follow. It is clear from this record that appellant's issues were not all considered. Numbers of voters testified that their votes had not been marked as they desired; and, while the judge of election, who was given, or assumed, the authority to lead the illiterates "by a way they knew not," and "make darkness light before them, and crooked things straight," testified that he performed his duties fairly and correctly, the facts and circumstances indicated fraud, and the matter should have been passed upon by the judge.

As said by the Supreme Court, in Marx v. Heidenheimer, 63 Tex. 304: "By reference to the conclusions found by the court, it will be seen that the judgment is based solely upon the ground that the two instruments, the original and supplemental deeds of trust, are void upon their face. It would seem that the court did not pass upon the evidence upon the contested issue as to whether Rice, the trustee, did or did not take and retain possession of the merchandise in pursuance of the power conferred upon him by the supplemental deed. The court having found at the outset that the instruments were void upon their face, this precluded any further inquiry as to the facts. So that, if the court erred in this conclusion, a reversal of the judgment and remanding of the cause would seem to necessarily follow; for the evidence upon that issue is conflicting, and appellants would have the right to have that evidence passed upon in the court below." So in this case the court evidently based his judgment upon the fallacy that the votes, as they ap-

peared in the ballot boxes, determined the result of the election. He states that "from an actual count of the ballots cast at said election, as taken from the ballot boxes," he found that relator and respondent each received a certain number of votes; and, while he investigated some of the ballots, he deducted only one from the total received by appellee, as shown by the actual count of the votes. In other words, the case was decided upon the theory that, if the voter was qualified, the face of the ballot controlled, no matter how much fraud had been practiced in the preparation of it. Ballots were not counted, because the voters lived outside of precinct 3, or were citizens of Mexico; but none of those alleged to have been fraudulently marked were passed upon, but necessarily were counted for appellee.

If the additional conclusions of the trial judge could be considered for any purpose, they indicate that the judge failed to pass on the evidence as to the ballot of one Felix Torres being marked by an election judge contrary to the wishes of the voter, and failed to consider and pass upon the unlawful marking of numerous ballots. All of the circumstances tend to show that this case was not fully and properly tried; and on grounds of public policy, and in the interest of fair elections and the protection of the rights of voters, the cause should not only be fully developed, but, when developed, every material point considered and passed upon by the trial judge. There was abundant testimony to raise the issue as to the fraudulent marking of ballots, and judgment should have been rendered thereon. When the judge is trying a cause, he is the judge of the weight of the evidence and the credibility of the witnesses; and he should exercise that power and authority on every material point, and especially one upon which the very existence of relator's cause of action depended.

[5] We think the allegations were sufficient to admit proof of the names of the voters whose ballots had been fraudulently marked, so as to render ineffective the desires of such voters. The court properly overruled the exceptions to the allegations, thereby attesting their sufficiency; and he should have considered and given a decision on the testimony adduced thereunder in one way or the other.

[6] A considerable portion of the brief of appellee is devoted to an exposé of the ignorance of the voters who claimed to have been defrauded of their votes, and no doubt can arise from their own testimony that their ignorance was appalling; but illiteracy is not a cause for disqualification of voters in Texas, and the only protection in their case is a rigid and honest compliance with the law in marking their ballots, so as to give effect to their desires. The denser the ignorance of the voter, the more culpable is the officer or citizen who takes advantage of it, and makes his ballot speak differently from what he wishes. No matter how ignorant the voters were, they seemed to know for whom they wanted to vote.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

R. P. Blucher admitted that he marked for the illiterate voters in ward 3; and that the marking was done, at least a portion of the time, in a little room adjoining the large room in which the election was held. A number of voters claimed that they told Blucher to scratch the names of the opponents of Sutherland; but the tickets disclosed that the names of Sutherland and Blake, candidates for mayor, were erased, and the name of Pease left. At least one voter, Felix Torres, challenged the act of Blucher in erasing the name of Sutherland, and leaving that of Pease, at the time; and another ballot was given him. A number of the tickets were not only marked, but deposited, by Blucher, who was a partisan of Pease; and, while he denied it, the evidence was overwhelming that he electioneered for his candidate while the ballots were being prepared. Blucher was appointed a judge of the election by Pease; and he was charged by complaint or indictment with what he termed "doing crooked work in the election." He admitted drinking at least three times while the election was going on. He could not specify any one of the illiterate voters who had told him to erase all names but that of Pease. He said: "I can't right now point my finger to one of them who testified on that stand that they voted for Sutherland, who told me in the booth to scratch their ticket for Pease, and don't think I can give the name of one of them." Each of the witnesses swore positively to having told Blucher to fix his ticket for Sutherland; and he met the testimony by a general assertion that he marked the tickets as he was told. He was contradicted in some particular by almost every witness who testified about the manner of holding the election. H. D. C. Gussett, who was the county treasurer, testified that he heard a voter, whose number was 39, tell Blucher that he wanted to vote for Sutherland. That vote, however, went in for Pease, and was counted by the court for him; the name of the voter being Antonio Davila.

[7] The testimony as to ward 3 showed that a partisan of Pease, who with the latter owned the electric light system of Corpus Christi, who was appointed a judge by Pease, who electioneered for Pease at the polls, who did the marking of the tickets for illiterate voters, a number of whom testified that they wanted to vote for one man, while their tickets were marked for another, who was under the influence of liquor, and yet

was allowed to take ignorant voters into a room and mark their ballots as he saw fit. After being marked, the voter was not even given the poor consolation of putting it in the box. With the evidence so overwhelming as to the mismarking of enough ballots to change the result of the election, of the threats beforehand to corrupt the election, taken in connection with the findings of the lower court, strongly indicating that he utterly ignored vital evidence, this court is unwilling to allow the judgment to stand. The lower court specifically passed upon the legality of 22 ballots, but did not specifically pass upon the legality of any ballot which was attacked upon the ground that it was not marked as directed by the voter, though there were more than enough of such ballots cast to change the result of the election, if all were found to have been marked for Pease, contrary to instructions. The court, after passing upon the 22 ballots, finds that in precinct No. 3 Sutherland received 177 legal votes of the qualified voters, and that Pease received 202 legal votes of the qualified voters. Judging by his other findings, the inference is very strong that he did not consider he had a right to find a ballot illegal, unless cast by a person not a legal voter, or unless illegal by reason of something appearing from the ballot itself. His findings nowhere show that he actually passed on and accepted as legal all ballots claimed to have been wrongly marked; and his general finding with respect to precinct No. 3 is so manifestly contrary to the evidence that it would be a miscarriage of justice to let the judgment based thereon stand. It is not the mere absence of a finding, but an erroneous general finding. To sustain the judgment, the uncorroborated evidence of a witness vitally interested in seeing the result of the election in his ward sustained must be upheld; and, although an appellate court reluctantly interferes with the verdict of a jury, or the judgment of a court on the facts, when no jury is had, still, when a verdict or judgment seems to be clearly wrong, and when it appears that evidence on vital points has been completely ignored, it becomes a duty of the court to set aside the judgment. Railway v. Somers, 78 Tex. 439, 14 S. W. 779; Light v. Brown, 26 S. W. 886; League v. Trepagnier, 13 Tex. Civ. App. 523, 36 S. W. 772; Railway v. Wilson, 59 S. W. 589.

With the overwhelming testimony as to the manner in which the election in ward 3 was conducted, the number of voters testifying that their ballots had been prepared in a way to defeat their wishes being sufficient to change the result, we are unwilling to agree with the finding of the trial court as to the number of legal votes cast for appellee, and believe that on grounds of public policy, and in the interest of a free and un-

hampered ballot, there should be a full consideration and clear finding as to the validity of every contested vote cast at the election under investigation.

The motion for rehearing is overruled.