233 P.2d 450

**PAXTON et al. v. McDONALD.**
No. 5234.

Supreme Court of Arizona.
June 25, 1951.

Opinion Modified on Rehearing
Oct. 9, 1951.

See 72 Ariz. 378, 236 P.2d 364.

Snell & Wilmer, of Phoenix, for appellants.

Herbert Mallamo, of Phoenix, for appellee. Leslie Parry, Phoenix, of counsel.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Maricopa County (1) from an order denying the objections of appellants to the form of judgment; (2) from the order denying their motions for a new trial; (3) for judgment notwithstanding the verdict; and (4) from their motions to strike appellants' statement of costs.

Appellant Industrial Research, Inc., is a corporation and will be hereinafter referred to as the company. In 1947 and up to the date of trial it was engaged in business in Phoenix consisting, among other things, of producing and selling upon the open market a flushing machine for use in connection with automotive and internal combustion engines. During the year 1947 appellee McDonald and co-appellant Paxton were employed by the company. In addition to being an employee of the company during this time Paxton was the owner of 25% of the capital stock and was vice president of the company. He is the inventor of, and has made application for a patent for the flushing machine produced by the company, as it was originally designed, and has since made some improvements upon it for which application for patents thereon have also been made.

In November, 1947, Paxton assigned to the company all of his right, title and interest in and to the applications for patent made by him upon the original flushing machine and improvements thereon. About

the middle of December, 1947, Paxton either became dissatisfied with his connection with the company or was in need of ready money and sold his interest in the company to a Mr. Crile for $3,500 and quit the employment of the company. McDonald also quit working for the company three or four days later and he and Paxton on or about December 25th entered into an oral agreement to form a partnership by the terms of which Paxton was to invent what he said was a new mechanical device for flushing internal combustion engines which he represented to McDonald to be different from anything in use anywhere. He stated it would not be at all like the one then being produced by the company which he described in his testimony as: " * * * a balancing type of machine that was on a fulcrum, and water running into a tank, filled it with water, and when it got so heavy it would trip an air valve and water would run out through the motor and radiator and the balancing weight on the other end retripped it and sent it back to repeat the cycle again, * * * " whereas the machine he proposed to invent and patent, as a partnership asset, " * * * was a hydraulic method of pumping water backwards and forwards through a pipe by a diaphragm run by an electric motor. It had no air or no pneumatic action whatsoever." He said it was an entirely new principle, "it wasn't an improvement, it was a different idea entirely." Paxton was to perfect the model for testing and demonstrating and McDonald was to go to Kansas

City and contact the U. S. Chemical Company there with a view of selling a large number of machines as a basis for financing their manufacture. Paxton was to furnish a model of the machine to McDonald for demonstrating its efficiency to the U. S. Chemical Company. Each was to have a one-half interest in the partnership business.

Pursuant thereto Paxton went to Los Angeles to perfect the model in conjunction with a. Mr. Rosenberg who is in business there and is a highly skilled mechanic and McDonald went to Kansas City to contact the U. S. Chemical Company. Paxton returned to Phoenix shortly after the first of the year, McDonald returning from Kansas City a few days later. Upon McDonald's return to Phoenix he found a request by Paxton awaiting him at his home for an immediate conference with him concerning another new invention which he described as a small flushing machine operated off of the spark plugs of the engine being flushed that could be carried "in your two hands." He discussed with McDonald the feasibility of producing the small machine as well as the diaphragm type machine, treating it as within the partnership arrangement, and proceeded to work on a model at Howard's Screw Machine Shop on South Central Avenue. The plan was that the two models should be sent to the U. S. Chemical Company at Kansas City in accordance with the understanding by the partners at the time the partnership agreement was consummated.

In order that a somewhat confused situation may be clarified we will state here that according to Paxton's testimony he he had invented four different types of flushing machines up to the date of the trial:

1. The machine being produced and sold by the company in 1947 described as operating on a fulcrum which by running water into a tank causes an air valve to trip and force the water under pressure through the radiator and engine.

2. The vacuum type machine. the mechanism of which he did not describe but stated that it is represented by a diagram identified as Exhibit C in the record. (Mr. Crile, president of the company, testified this Exhibit C represented the diaphragm type machine.)

3. The diaphragm type machine which Paxton described as a hydraulic method of pumping water by a diaphragm run by an electric motor.

4. The small spark plug type which operates off the spark plugs of a combustion type engine. We will hereinafter refer to them as the trip valve type, the vacuum type, the diaphragm type and the spark plug type machine.

Paxton continued to work on the spark plug model until around the first of March. McDonald was at the shop frequently and

aided in getting some of the parts for the machine. In the meantime, however, and on or about January 16, 1948, Paxton returned to work for the company and entered into an agreement with it in which he assigned all of his right, title and interest in his application for patent bearing date January 7, 1948, for the small spark plug flushing machine. *In consideration of this assignment of his interest in the application for patent to this small spark plug machine he was given 25 shares of the capital stock in the Industrial Research, Inc., or a one-fifth interest therein.* McDonald had advanced to Paxton $200 for him to make the trip to Los Angeles and also spent around $400 on his trip to Kansas City to try to sell the machines to the U. S. Chemical Company. He did not know Paxton had returned to work for the company and did not know of the assignment of his interest in the application for patent for the small spark plug machine until some time later in March.

Upon learning of Paxton's action and being unable to reach a settlement with him, McDonald filed suit against him and the company setting up his oral partnership agreement with Paxton relative to the invention and proposed production of the diaphragm type flushing machine. He alleged that Paxton had sold to the company the application for patent rights to the diaphragm type machine and that the same was an asset of the partnership under the partnership agreement. He further alleged that the company had knowledge of his interest therein at the time of its purchase thereof and in his first cause of action, asked for a dissolution of the partnership, for an accounting, and for judgment both against Paxton and the company.

In his second cause of action he sought to recover damages against both defendants for loss of profits on the sale of the diaphragm type machine which he alleged he had tentatively made to the U. S. Chemical Company. He also asked for judgment for the value of one-half of the stock issued by the company to Paxton in consideration of his assignment to it of the application for patent for the diaphragm type *machine.* Defendants denied generally and specifically each and all of the allegations of the complaint except that Paxton had invented the flushing machine and had sold his rights therein to the company.

The court directed that the causes of action be tried separately and that the parties proceed to trial on the first cause of action. Paxton admitted upon the witness stand that he and McDonald had a partnership agreement relating to the invention, production and sale of the diaphragm type machine conditioned upon McDonald paying $2,500 into the partnership. McDonald testified nothing was said about $2,500 being contributed by him to the partnership as a condition precedent to the creation of the partnership relation between him and Paxton. It was tried to a jury and submitted

upon the single interrogatory reading as follows: "Was the agreement of plaintiff McDonald and the defendant Paxton to become partners conditioned upon the plaintiff McDonald putting up or making available the sum of $2500?" This interrogatory was answered in the negative. Thereupon the court entered judgment for McDonald against Paxton adjudging and decreeing that McDonald have judgment on his first cause of action as follows:

"That a partnership is declared to have existed between plaintiff and defendant Paxton as alleged in plaintiff's complaint; that capital stock of defendant Industrial Research, Inc., received by defendant Paxton is a partnership asset;  ·

"And that the partnership be dissolved; and an accounting had, and the net assets if any, distributed to the partners in equal portions.

"Now, therefore, it is ordered, adjudged and decreed:

"1. That the plaintiff George R. McDonald and the defendant Dewey Paxton entered into a partnership agreement and became partners on or about the 25th day of December, 1947, in the ownership of a pneumatically operated diaphragm type flushing machine and in the development, refinement and improvement of the same; and in producing, selling, distributing and patenting of the same; and agreed to share the profits and losses fifty (50) per cent to the plaintiff and fifty (50) per cent to Dewey Paxton.

"2. That the twenty shares (under all of the evidence this should be 25 instead of 20 shares) of capital stock of the defendant Industrial Research, Inc., a corporation, received by the defendant Dewey Paxton is a partnership asset.

"3. That the partnership between George R. McDonald and Dewey Paxton be and the same is hereby dissolved.

"4. That an accounting be had of the partnership transaction forthwith and that either the plaintiff George R. McDonald or the defendant Dewey Paxton may apply to the court upon seasonable notice for the appointment of a master for the purpose of said accounting as to said partnership affairs.

"5. That upon said accounting had and the master's report of the result thereof returned into court, the net assets of said partnership be distributed in equal portion to the said George R. McDonald and the defendant Dewey Paxton, the court reserving jurisdiction for the purposes of such accounting and distribution.

"6. That the plaintiff do have and recover his costs herein incurred and expended as taxes and allowed by the clerk of this court."

The court declined to make a finding or render a judgment upon the issues raised

in the pleadings between the Industrial Research, Inc., and McDonald.

On appeal appellants have presented a number of assignments of error. The first three assignments were directed at the court's refusal to adjudicate the issues made by the pleadings between the company and McDonald and the remainder of such assignments concerned the findings and decisions of the court relating to the respective rights of Paxton and McDonald under the partnership agreement.

It is clear from the record in the case that the court erred in denying to the company an adjudication of the issues between it and McDonald as raised by the pleadings. The pleadings presented a clear-cut issue between McDonald and the company, and McDonald presented evidence designed to support his claim of liability of the company to him. This claim was based upon the alleged sale of partnership assets by Paxton to the company and that the company at the time of purchase had knowledge of plaintiff's interest therein. A Mr. Crile, president of the company, was called for cross-examination by plaintiff and testified positively that the company had no knowledge of McDonald's interest or claim of interest in the application for patent assigned to it by Paxton on January 16, 1948, and no competent evidence was offered to prove that such knowledge did, in fact, exist. The court correctly ruled that there was no conflict in the evidence on the question of knowledge of the com-

pany that a partnership existed between McDonald and Paxton and properly refused to submit an interrogatory on that question to the jury. But the company was entitled to an adjudication of the issues raised by the pleadings between it and the plaintiff on his first cause of action. State ex rel. Sutherland v. Pease, Tex.Civ.App. 147 S.W. 649. We hold that the company, having no knowledge of the existence of a partnership between McDonald and Paxton and of McDonald's interest in the applications for patent to the spark plug type machine assigned to it by Paxton, on January 16, 1948, took the same free from any interest McDonald may have had in it. We therefore direct that judgment be entered in favor of the company on plaintiff's first cause of action and that plaintiff's cost bill as to the company be stricken.

The second question involved is not so simple. That a partnership existed between Paxton and McDonald as alleged in the complaint has been definitely determined by the trial court upon a conflict in the evidence by which we are bound. Conceding the existence of the partnership relation between Paxton and McDonald (which we believe to be amply supported by the evidence) it does not necessarily follow that the 25 shares of stock in the company received by Paxton in consideration of his assignment to the company of the application for patent on the spark plug type machine is a partnership asset. Unless the spark plug type machine is a part-

·nership asset, it follows that the stock received therefor from the company is not .a partnership asset.

■ Under the pleadings the spark plug type machine was not alleged to be an asset of the partnership. The allegations relating to partnership. assets were limited to the diaphragm type machine which has no relation whatever to the so-called spark plug type machine. Although we are convinced from a careful study of the transcript of the evidence that it was the intention of both Paxton and McDonald that the spark plug type machine was to be a partnership .asset because its marketing was discussed by them in connection with the sale of the diaphragm type machine; whether it would be feasible to prefer it over the diaphragm type by reason of the smallness of its size, etc. Furthermore in Paxton's·calls to the McDonald residence before McDonald's return from Kansas City he told Mrs. McDonald about this new spark plug invention urging McDonald to contact him about it as soon as he returned. He stated he was sure McDonald would like it and would like to produce it. McDonald was to show it to the U. S. Chemical Company. In light of these facts we are of the view that the court erred in not granting plaintiff's motion to amend his pleadings during the course of the trial to include the spark plug type machine as a partnership asset to conform with the evidence. No cross assignment of error was made upon this ground,

however, and this court is without jurisdiction to consider it.

■ The contract of assignment bearing date of January 16, 1948 together with the testimony of Mr. Crile shows conclusively that the stock issued to Paxton by the company was in consideration of his assignment to it of the application he had pending for the spark plug type of flushing machine which as above pointed out was not alleged to be a partnership asset. This being true, the stock issued to Paxton is not a partnership asset. It was reversible error for the court to so hold.

Inasmuch as the second cause of action has not been tried we believe it proper to make the following observation for the guidance of the court in that trial.

The evidence clearly shows that the partnership agreement gives to McDonald a 50% interest in the diaphragm type machine and in the patent thereto. Mr. Crile testified that sometime in the summer of 1947 Paxton had assigned to the company all of his interest in and to the invention and the application for patent to a machine represented by the diagram, marked in evidence as Exhibit C. He stated this is the diaphragm type flushing machine and pointed out that the figure 24 on the diagram rep·resents the diaphragm in the machine. (As above stated Paxton's testimony is in conflict with this. He refers to this drawing as the vacuum type machine, and that the diaphragm type is entirely different.) This

exhibit bears no date and is not supported by an application for patent. The court therefore cannot definitely determine whether the assignment, if made at all, was before or after the partnership relation between Paxton and McDonald came into existence. Paxton stated to McDonald, as an inducement to the formation of the partnership with him, and testified at the trial that the diaphragm type flushing machine was entirely different from the machine then being produced by the company, that it was entirely different from any machine in use anywhere, and that the invention was completely new. He stated to McDonald that he had taken the first steps for protection of patent for the diaphragm type machine by writing and mailing a letter to himself. Although he did not expressly state that no application for patent had been made therefor, he clearly intended that such an inference should be drawn from what he did say. Most of his testimony is more or less evasive and equivocal. If his statements to McDonald were true, or if he had not previously assigned the application for patent thereto to the company, he had the right to give McDonald a one-half interest in that machine and in the application for patent in consideration of the contribution McDonald was to make to the partnership.

There is no evidence that McDonald at the time, had any knowledge of the interest that the company claims to have in the diaphragm type of flushing machine if such interest did then exist. There is nothing in the evidence to show a public record anywhere of the company's interest. The company is using the diaphragm in the flushing machine it is now producing and selling upon the market.

Section 47 of 35 U.S.C.A. as amended by Act of August 18, 1941, chapter 370, 55 Stats. 634, provides: "Every application for patent or patent or any interest therein shall be assignable in law by an instrument in writing, and the applicant or patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent or patent to the whole or any specified part of the United States. An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice unless it is recorded in the Patent Office within three months from the date thereof or prior to such subsequent purchase or mortgage."

Crile's testimony that the company had an assignment to the application for patent to the machine represented by Exhibit C in evidence was not the best evidence, but conceding his statement to be true, if the assignment was made during the summer of 1947 it had to be recorded in the patent office, under the law, before January 16, 1948. Therefore as between McDonald and the company, if the assignment of the application for patent of the diaphragm type machine was of record in

the patent office at Washington, D .C., at the time the partnership agreement was made, McDonald is charged with knowledge of any interest the company had therein and McDonald, in such event, acquired no rights thereto by reason of the partnership agreement with Paxton which would in any wise affect the interest of the company. Conversely, if the assignment of the application for patent to such machine, if previously made, was not of record in the patent office, McDonald received a valid and enforceable one-half interest therein and is entitled to relief as against both the company and Paxton for the value of such interest.

For the above reasons the judgment of the trial court is modified and remanded with instructions to enter judgment for Industrial Research, Inc., on the first cause of action as above indicated and that the 25 shares of capital stock issued to Paxton by the company be adjudged to not be a partnership asset. Otherwise judgment affirmed.

Modified and affirmed.

UDALL, C. J., and STANFORD, DE CONCINI, and LA PRADE, JJ., concur.