### W. P. LAUGHTER ET AL. v. E. C. LAUGHTER ET AL.

#### Decided June 15, 1899.

**1.  Estoppel—Heirs—Paying Debts of Estate.**

Heirs who agree that two of their number, owing the estate on land notes, shall pay the debts of the estate, are estopped from denying to those making such payments credit on their notes for amounts so paid.

**2.  Limitations—Tacking Disabilities—Coverture and Minority.**

The disabilities of coverture and minority can not be tacked, and where limitation would have commenced to run against the mother but for her coverture, it began to run at her death against all her children, irrespective of their minority or coverture.

**3.  Practice on Appeal—Harmless Error.**

Where the evidence was such as to require the finding of the verdict in appellee's favor, the judgment will not be reversed for error of the court in giving and refusing charges.

APPEAL from Jackson.  Tried below before Hon. WELLS THOMPSON.

*J. M. Moore,* for appellants.

*Fly & Hill,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—M. H. Laughter in 1880 was the owner of 600 acres of land situate in Jackson County, and on August 14th of said year he executed a bond to two of his sons, T. L. and G. H. Laughter, by which he obligated himself to make title to them to said land on the payment by them of their two promissory notes, by them executed to him, for $600 each, in consideration of the execution of said bond; the first payable on the 20th of December, 1880, and the second payable on the 20th of December, 1881.  T. L. Laughter afterwards assigned his interest in the land to his brother, R. F. Laughter, and the latter and G. H. Laughter remained in possession of the land until their deaths, which occurred respectively in 1889 and 1890, and their widows and children have since continued in possession of the premises.  In August, 1880, a few days after the execution of the bond to his sons, M. H. Laughter died intestate, leaving surviving him as his heirs eight children and three grandchildren, the latter being all minors.  In 1890

Mrs. C. E. Laughter and Mrs. A. M. Laughter, widows respectively of
G. H. and R. F. Laughter, deceased, for themselves and for their minor
children, instituted suit against the heirs of M. H. Laughter for specific
performance of the said bond. Some of the defendants were cited by
publication, and in November, 1881, in the District Court of Jackson
County, the defendants failing to appear and answer the suit, judgment
was rendered for the land described in the bond for plaintiffs and at
the November term, 1897, a motion was filed by several of the heirs of
M. H. Laughter praying that said judgment be set aside and a new trial
granted, and that the land decreed in said judgment to be the property
of the plaintiffs be partitioned among all of the heirs of M. H. Laughter,
or, in the alternative, that the amount of the two promissory notes exe-
cuted by T. L. Laughter and G. H. Laughter, which it was alleged were
still unpaid, be adjudged against the plaintiffs, and the money distributed
among the heirs of M. H. Laughter. The motion was based upon sev-
eral irregularities in the prosecution of the suit, besides the averment
that the notes, which constituted the consideration of the bond under
which plaintiffs assert title to the land in controversy, were unpaid. The
court heard the motion, overruled exceptions filed by plaintiffs to the
same, and granted a new trial in the cause. Heirs of M. H. Laughter,
representing five-ninths of his estate, appeared and entered disclaimers
in favor of the plaintiffs, and the cause proceeded between plaintiffs and
the appellants, the children and surviving husband of Mrs. Robert
Milby, who was a daughter of M. H. Laughter and who died in 1883,
representing one-ninth of the estate, and Mrs. Lea Scott, a granddaugh-
ter of M. H. Laughter, and who represented another ninth of the estate.
Upon trial of the cause verdict and judgment were rendered for the
plaintiffs, and Mrs. Milby's heirs alone appealed to this court.

We make a brief statement of the facts developed upon the trial: M.
H. Laughter, as has been stated, died intestate, and there was never an
administration upon the estate. The deceased left surviving him two
minor daughters, aged 12 and 14 years, whose mother had been dead for
several years, and these daughters their father, on his deathbed, com-
mitted to the care and protection of their brother, R. F. Laughter, with
the request that he would keep them at home, and with instructions to
him to use the crops grown upon his lands that year for their support;
and shortly after their father's death his adult children, with the ex-
ception perhaps of the mother of the appellants, and as to whether she
was present or not the testimony is conflicting, held a family meeting,
at which it was determined their father's wishes should be respected,
and that the minor daughters should remain with their brother, R. F.
Laughter; and they did remain with him until they were married, and
were cared for by him. And at said meeting it was also agreed that the
brothers, R. F. and G. H. Laughter, should pay the debts due from
their father's estate out of the amount due from them on their promissory
notes. The estate was indebted to one Allen for money borrowed from
him by the deceased, and to one Gisler, a merchant. Allen testified that

he loaned the deceased, in 1879, $895, for which he gave his note bearing 12 per cent interest per annum, which note was paid in 1881 by G. H. and R. F. Laughter, less credits to which it was entitled as shown by his books, aggregating about $220, some $38 or $43, of which were amounts paid him by parties indebted to the deceased at his death; and Gisler testified the deceased owed at death $125 or $150, which was paid him by G. H. and R. F. Laughter. There was testimony of continuous possession of the premises from 1880, with payment of taxes every year, by G. H. and R. F. Laughter during their lives. The evidence was conflicting as to the value of the crops grown on the lands of the decedent in 1880, and also as to the value of his personal property or the number of his work animals. The evidence does show, however, that the value of the personal estate was not large. There was evidence that the heirs supposed the debts were paid by G. H. and R. F. Laughter, and that no one ever questioned their right to the land in controversy until the filing of the motion for new trial by appellants and Mrs. Scott in 1897. Such was the testimony of one of the sons of the deceased. The notes executed to the deceased by his sons for the land were found in the possession of the widow of one of them, as were also the notes due from the deceased to Allen, and the account due to Gisler by the deceased.

There are several assignments and cross-assignments, but from our standpoint reference need be had to few of them. It is urged by the appellants that the court erred in admitting evidence of the payment of the debts due to Allen and to Gisler; that there was no authority in law for the payment of such debts by anyone, except in the mode pointed out by the statute pertaining to the estates of decedents; nor were such payments, if authorized by a majority of the heirs of the estate, binding upon such of the heirs as were not parties to such an agreement. While these contentions can not be gainsaid, it is nevertheless true, that as to such of the heirs as authorized such payments, they would be estopped from denying to the payors of the notes executed to the deceased credits for debts of the estate paid by them, and we think the evidence was admissible, in connection with that offered by plaintiffs to support their claim of title, under their pleas of three, five, and ten years limitation. And we think the court erred in not submitting the question of limitation as to the right of the appellants to recover the land, since their mother, through whom they claim title, died in 1883. She being under coverture at the time of the death of her father, the statute of limitation was suspended or inoperative as to her, but at her death it would begin to run against all of her children, whether laboring under disabilities of coverture or minority. From the evidence, our conclusion is that adverse possession of the premises was clearly established for ten years prior to the filing of appellants' answer in this suit, to say nothing of the periods of limitation of three and five years, both of which were pleaded, as we have seen, as well as the ten years statute; and the refusal of the court to submit these issues is the subject of cross-assignments by the appellee. The appellants complain also under their assignments of

the charge of the court in several particulars, and also of the action of the court in refusing charges requested by them; but if it be conceded that appellants' assignments show that the court erred in every matter complained of, nevertheless, if the jury under proper instructions from the court must, under the evidence, have found for the plaintiffs against the appellants, the judgment should not be reversed; and such is this case, in our opinion, as disclosed by the record, and the judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.