## PEASE v. STATE ex rel. SUTHERLAND.

(Court of Civil Appeals of Texas. San Antonio. March 19, 1913. Rehearing Denied April 16, 1913.)

1. APPEAL AND ERROR (§ 1097*)—SUBSEQUENT APPEAL — FORMER DECISION AS LAW OF CASE.

The determination of questions raised on a former appeal is the law of the case on a subsequent appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368, 4427; Dec. Dig. § 1097.*]

2. CONTINUANCE (§ 37*) — APPLICATION FOR CONTINUANCE—SETTING OUT FACTS.

In an application for a continuance for absent witnesses, the facts expected to be proved by them should be set out instead of the pleader's conclusions.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 117–121, 127; Dec. Dig. § 37.*]

3. CONTINUANCE (§ 23*)—GROUNDS—ABSENCE OF WITNESSES—MATERIALITY.

Defendant, in a quo warranto proceeding to oust him from his office as mayor, applied for a continuance on the ground that he was deprived of the testimony of absent witnesses, who had been election officers, as to whether an election judge, who was shown to have mismarked ballots for illiterate voters, was intoxicated or not, without alleging any conspiracy between

the election officers, or that the absent witnesses had anything to do with appointing the election judge, or as to other irregularities not invalidating a vote. *Held* that, as the only issue was who got the most legal votes, the application was properly denied because the evidence sought thereby was immaterial.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 68–71; Dec. Dig. § 23.*]

**4. CONTINUANCE (§ 22*)—GROUNDS—DELAY.**

Application for a continuance in quo warranto to oust defendant from his office as mayor, where the only issue was as to whether defendant or relator had gotten the most legal votes, and where it appeared that no effort had been made to procure the testimony of absent witnesses by deposition as might have been done, and that the application was framed solely with the view of obtaining a continuance for the term rather than a postponement, and that appellant did not propose to take such depositions, or to use the testimony at a former trial, which testimony was voluminous, *held* properly denied on the ground that it was made for delay, and, in view of the speedy trial contemplated upon quo warranto, would be an injustice to appellee.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 58–67; Dec. Dig. § 22.*]

**. 5. APPEAL AND ERROR (§ 837*) — REVIEW — MATTERS OF EVIDENCE—APPLICATION FOR CONTINUANCE.**

In view of Rev. Civ. St. 1911, art. 1918, making no distinction between first and subsequent applications for continuance other than that on a first application it shall not be necessary to show that the absent testimony cannot be procured from any other source, an appellate court, in passing upon the overruling of an application for a continuance, may look to the evidence taken upon the trial to determine whether the testimony desired was in fact material, and whether in fact any injury resulted by reason of its absence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3272, 3274–3277, 3289; Dec. Dig. § 837.*]

**6. ELECTIONS (§ 293*)—CONTEST—PETITION.**

Under allegations in a petition in quo warranto to oust defendant from his office as mayor and place relator therein, on the ground of fraud in the election consisting of election officers marking the ballots of illiterate voters contrary to instructions, and that in a voting precinct a certain number of votes were cast for relator which were mismarked by an election judge, the ballots, as contained in the ballot box of that precinct, were admissible.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 288–296; Dec. Dig. § 293.*]

**7. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Error, if any, in the admission of evidence favorable to the party complaining, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

**8. TRIAL (§ 84*)—OBJECTION TO ADMISSION OF EVIDENCE—SUFFICIENCY.**

A party objecting that testimony in a stenographer's transcript, duly certified and filed, was not admissible without proof under oath of its correctness should object specifically; the objection that no proper predicate was laid being too general to require the court to swear the stenographer and prove his transcript.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 211–218, 220–222; Dec. Dig. § 84.*]

**9. TRIAL (§ 377*)—TRIAL BEFORE COURT—RECEPTION OF EVIDENCE.**

Upon a trial before the court, the same strictness in regard to the admission of evidence is not required as on a trial before a jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 887–890; Dec. Dig. § 377.*]

**10. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—EXAMINATION OF WITNESSES—LEADING QUESTIONS—RULES OF COURT.**

In quo warranto to oust defendant from his office as mayor on the ground of fraud and irregularities in the election, nearly all of the witnesses, to whom leading questions were propounded, were Mexicans testifying through an interpreter, and most of the questions were asked on redirect examination in response to questions not complained of, while other questions were on immaterial matters. *Held* that, as a leading question must be prejudicial before error can be predicated upon the overruling of objection thereto, and in view of rule 62a for Courts of Civil Appeals (149 S. W. x) prohibiting reversals, unless for actual prejudice or error contributing to a wrong judgment, error, if any, in the asking of such leading questions was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

**11. APPEAL AND ERROR (§ 728*)—ASSIGNMENTS OF ERROR—SETTING OUT TESTIMONY.**

Assignments of error to the admission of evidence, not showing the evidence admitted, will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

**12. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—ADMISSION OF EVIDENCE—RULE OF COURT.**

In quo warranto to oust defendant from his office as mayor on the ground of fraud and irregularities at the election, error in permitting a witness to testify that he stated to another, on leaving the polls, that, if they won the election, it would be nothing but luck, was not reversible error in view of rule 62a for Courts of Civil Appeals (149 S. W. x), prohibiting reversals unless for actual prejudice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

**13. APPEAL AND ERROR (§ 1056*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.**

In quo warranto to oust defendant from his office as mayor on the ground of fraud and irregularities in the election, the refusal to permit a witness who had testified that nobody complained of any irregularities, and that he did not hear of a certain third person doing anything, to testify as to whether he heard such third person make any complaint about irregularities was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. § 1056.*]

**14. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—FACTS OTHERWISE SHOWN.**

Error in permitting a witness in an election contest to be asked whether his uncle had been indicted many times for irregularities in the election in question was harmless in view of the fact that the uncle himself testified he had been indicted in a large number of cases growing out of such election.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**15. Evidence (§ 474½*)—Opinion Evidence —Electioneering.**

In quo warranto to oust defendant from his office as mayor, where a witness testified that he heard no one electioneering or any conversations in the room, but that if loud electioneering had taken place he would have heard it, there was no error in refusing to allow him to state his opinion as to whether he would probably have noticed electioneering if any had taken place.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2220–2233; Dec. Dig. § 474½.*]

**16. Evidence (§ 155*)—Admissibility—Evidence Admitted in Part.**

Where defendant, in quo warranto to oust him from his office as mayor, put in evidence parts of the testimony of certain witnesses at a previous trial, relator was entitled to introduce the remainder of the testimony given upon the same occasion, as well as statements made upon the examining trial regarding the same matter.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458; Dec. Dig. § 155.*]

**17. Appeal and Error (§ 1170*)—Harmless Error—Admission of Evidence—Materiality.**

In view of rule 62a for Courts of Civil Appeals (149 S. W. x), prohibiting reversals unless for actual prejudice or error resulting in a wrong judgment, error in reproducing the former testimony of witnesses in an election contest, where parts thereof had not been introduced by the adverse party, in view of the fact that the court had heard nearly all of it before, was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

**18. Elections (§ 180*)—Ballots—Validity.**

A ballot with a cross after the name against which he wished to vote could not be counted.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 151–155, 157; Dec. Dig. § 180.*]

**19. Elections (§ 227*)—Ballots—Validity.**

Ballots directed by illiterate voters to be marked for one candidate, but in fact fraudulently marked for another, could not be counted for the candidate for whom they were marked.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 197–200; Dec. Dig. § 227.*]

**20. Appeal and Error (§ 1071*)—Harmless Error—Error in Immaterial Finding.**

Error in a finding, not necessary in support of a judgment, is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

**21. Elections (§ 295*)—Contest—Judgment of Ouster—Sufficiency of Evidence.**

Evidence, in quo warranto to oust defendant from his office as mayor and to place relator therein on the ground of fraud and irregularities in the election, held sufficient to sustain a judgment ousting defendant from office and awarding the same to relator.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 297–299; Dec. Dig. § 295.*]

**22. Elections (§ 303*)—Contest—Judgment of Ouster—Award of Office.**

A petition in quo warranto alleging that relator was entitled to hold and enjoy the office of mayor for the term of two years, and to receive the emoluments thereof alleged to be of the reasonable value of $3,600 for the two years, and praying in part that he be adjudged entitled to the office and its franchises and privileges with a prayer for general relief, justified a judgment that relator, on being awarded the office, was entitled, as against defendant, to demand the proportionate part of the salary of such office to the date of judgment at the rate of $1,800 per annum.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 315; Dec. Dig. § 303.*]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Quo warranto by the State of Texas on the relation of H. R. Sutherland against Clark Pease. Judgment for relator, and defendant appeals. Reformed and affirmed.

Jno. C. Scott, G. R. Scott, and Boone & Pope, all of Corpus Christi, and Cunningham & Birkhead, of San Antonio, for appellant. D. McNeil Turner, Russell Savage, and Pope & Taylor, all of Corpus Christi, for appellee.

MOURSUND, J. This is a quo warranto instituted by the state of Texas, through its district attorney, John I. Kleiber, upon the relation of H. R. Sutherland, to oust appellant, Clark Pease, from the office of mayor of the city of Corpus Christi and place relator therein. Upon a former trial judgment was rendered in favor of Clark Pease, which was reversed by this court (147 S. W. 649). This trial resulted in a judgment against said Pease, from which this appeal was taken.

The trial judge filed his conclusions of fact, which are lengthy, but the main features of which are that, while on the face of the returns Pease was elected, it appeared many ballots had been counted for him which were actually cast for Sutherland, and that many ballots of illiterate voters had been mismarked so as to indicate that the voter had voted for Pease, when in fact he had instructed the officer of the election, who marked his ballot, to mark the same so that his vote would be counted for Sutherland; he also found that votes by persons not qualified to vote had been counted, and after excluding the same, and correcting the count of the ballots, and giving Sutherland credit for those whose votes he found should have been marked for him, but were in fact marked for Pease, he concluded that Sutherland was duly elected by a majority of 52 votes, and rendered judgment declaring him elected.

[1] The first seven assignments complain of the action of the court in overruling special exceptions to the petition. The questions raised in the fourth, fifth, and sixth assignments were raised by cross-assignments upon the former appeal and determined adversely to appellant Pease. The first and seventh assignments complain of the overruling of special exceptions, which were too general and vague to require consideration, and such assignments are without merit. We are also of the opinion that there is no merit in the second and third assignments. By the eighth assignment appellant complains because the

court refused to grant his application for a continuance. Reliance is placed upon the fact that appellant was deprived of the testimony of A. C. Priday and F. L. Ford, both of whom were election officers in the third voting precinct assisting in conducting the election under which Pease and Sutherland each claim to have been elected mayor. The statement under this assignment does not disclose what averments of diligence were made, nor the reasons set up for the absence of the witnesses, nor why their testimony could not be procured, but an examination of the record discloses that Priday was ill at Kerrville, Tex., and the whereabouts of Ford was unknown.

[2] The allegations of the application, by which materiality of the testimony of these witnesses is sought to be shown, consist very largely of conclusions, when the facts which are expected to be proved should be set out. Earl v. State, 33 Tex. Civ. App. 161, 76 S. W. 207; Land Co. v. Lumber Co., 21 Tex. Civ. App. 414, 52 S. W. 645.

[3, 4] The record on the former appeal disclosed that 16 days were consumed in the first trial, after the taking of evidence began, while upon the trial now being reviewed the application for continuance was overruled on July 12, 1912, and judgment rendered on August 3, 1912. The mandate from this court was not filed below until July 9, 1912. No effort was made to procure the testimony of Priday by depositions, and it appears reasonable that the same could have been taken, even without waiver of notice, and returned within the time taken for trying the case upon the former trial; nor was any postponement sought in the application, which was framed solely with a view to obtaining a continuance for the term. The application was contested, and in such contest the testimony of these witnesses, taken down by the stenographer upon the former trial, was tendered appellant to be used as depositions upon this trial, and the same was introduced in evidence by appellee. Appellant introduced in evidence the testimony of about 16 of his witnesses taken upon the former trial; this being done by agreement. Evidently realizing that appellant's anxiety to have these witnesses actually present appears unaccountable, when the testimony of so many others is reproduced, his counsel, in the supplemental argument herein, contend that, in addition to Priday's former testimony, they expected to show by him that Blucher was sober, and also that Blucher was not made "scratching judge" that day by agreement between the election officers as a part of a conspiracy. The part relating to how Blucher was made "scratching judge" was considered so unimportant at the time the case was briefed that it is not even mentioned in the statement under this assignment. No contention was made that Blucher was so greatly under the influence of intoxicants as

not to know what he was doing; in fact, the contention was that he knew exactly what he was doing. The extent to which Blucher subjected himself to the influence of intoxicants was of little moment in passing upon his credibility; but the fact that he indulged at all in intoxicating liquors during the election, in violation of law, was important in passing upon his credibility on the issue whether he violated the law in another particular, namely, by mismarking ballots for illiterate voters. In this connection, it is to be noted that Blucher admitted that he took a half pint bottle of whisky with him when he went to the polls to officiate as an election judge, and that he drank the same during the day, and admitted drinking in the room where he marked ballots, but testified he was not drunk.

We find no testimony that Blucher was drunk, and we do not think a continuance should have been granted in order to have Priday add to his former testimony (which was to the effect that he saw Blucher take a drink) a statement that Blucher was sober. Such testimony was not material. The testimony denying his participation in a conspiracy to appoint Blucher "scratching judge" was immaterial, as would be readily contended by appellant if a finding to that effect had been made by the court. However, there is not any allegation that appellees would seek to show such a conspiracy, and the evidence upon this trial shows that, if any such conspiracy existed, it must have been between the presiding judge and Blucher, as all the evidence shows that the presiding judge assigned each officer to his respective duties. No contention being made that the election officers conspired together, or that Priday had anything to do with appointing Blucher, it appears that his denial of such matters could add nothing material to this case. It is, however, further contended in argument, but not in the brief, that appellant might have been deprived of the privilege of amplifying the testimony of the witnesses, though wherein, except in the two particulars above mentioned, is not disclosed, and in fact both appear to have testified fully. Both were supporters of Pease and were his witnesses upon the former trial. Priday's testimony takes up 10½ pages in the statement of facts, while Ford's was so complete that no suggestion is made as to anything which could be added thereto. The conclusion is irresistible that appellant wanted a continuance and did not propose to ask for a postponement, though the term had just begun, nor to take Priday's depositions, nor to use the former testimony.

The application does not allege that either witness would testify, or was even expected to testify, that Blucher did not mismark any one of the ballots of the 39 illiterates whose ballots he is found to have mismarked, nor that either would testify that he knew of a

single voter whose ballot Blucher marked, and to the marking of which the witness paid attention, so he could say it was marked according to instructions. From the evidence of these witnesses upon the former trial, it appears clearly that they could not testify that Blucher did not mismark the ballots, or any of them, found by the court to have been mismarked by him, or even to facts tending to show such to be the fact, and that, if the allegations were held to be sufficient to charge that such would be their testimony, the same were probably false. While it is alleged that Priday would testify that he scratched ballots of illiterate voters, yet there is no allegation showing that fact to be material, and the court knew, and we know now from the record, that such fact was not material; that no contention is made that Sherman or Priday scratched so many ballots of illiterates as to leave Blucher scratching less than the number who claimed he mismarked their ballots; and that Blucher testified there were about 200 Mexican voters in that precinct, but he could not say how many he marked ballots for. As both parties claimed the office under the election, the only issue was who got the most legal votes, and irregularities not invalidating a vote are immaterial, as is admitted in appellant's brief.

We are of the opinion that the court was justified in concluding there was no merit in the application because it contained conclusions, not facts, and because the witnesses could cast no light on the material issue; that it was made for delay; that appellant could get Priday's depositions if he wanted them; and that it would be an injustice to appellee to continue this quo warranto case, in which the law contemplates there shall be a speedy trial. We also conclude that no injury was suffered by appellant upon this trial by reason of the absence of said witnesses.

[5] Our present statute (article 1918, Revised Statutes 1911) makes no distinction between first and subsequent applications other than that on a first application it shall not be necessary to show that the absent testimony cannot be procured from any other source. There is no longer any reason for distinguishing between first and second applications in so far as the question of discretion of the court is concerned; nor can it be doubted that an appellate court in passing upon an assignment complaining of the overruling of an application for continuance, may look at the evidence taken upon the trial to determine whether the testimony desired was in fact material, and whether in fact any injury resulted by reason of its absence. Crouch v. Johnson, 7 Tex. Civ. App. 435, 27 S. W. 9; Lumber Co. v. Cooper, 126 S. W. 37; Life Ins. Ass'n v. Garvin, 141 S. W. 798; Railway v. Brooks, 132 S. W. 95. For the reasons stated in discussing this assignment,

we hold that the trial court did not err in refusing the continuance applied for.

[6] The ninth assignment complains of the introduction in evidence of the ballots as contained in the ballot box of the third precinct, because of want of proper allegation in the petition. We think the allegations were sufficient. Gray v. State, 19 Tex. Civ. App. 524, 49 S. W. 699. There is no merit in the tenth assignment, and the same is overruled.

[7] By assignment 11 appellant complains because the testimony of Priday, given upon the former trial, was admitted in evidence. This evidence was favorable to appellant, and he has suffered no harm by its introduction. It results that assignments 12 and 13, which complain of testimony by which it was sought to lay a predicate for the introduction of such testimony, are likewise overruled.

[8] The fourteenth assignment is overruled for the same reason as the eleventh. If desirous of contending that testimony contained in the stenographer's transcript, duly certified to and filed as provided by law, was not admissible without proof under oath of its correctness, such objection should have been specifically stated; the objection that no proper predicate was laid was entirely too general to require the court to swear the stenographer and prove up his transcript, if that could be required under our present statute in order to admit the same in evidence.

[9, 10] Assignments 15 to 21, inclusive, 23, 27 to 30, inclusive, and 32 to 45, inclusive, complain because leading questions were permitted to be asked. Upon a trial before the court, the same strictness in regard to the admission of evidence is not required as upon a trial before a jury. Merriman v. Blalack, 56 Tex. Civ. App. 594, 121 S. W. 559. Nearly all of the witnesses to whom leading questions were propounded were Mexicans, testifying through an interpreter, and most of the questions were asked on redirect examination calling for answers given on direct examination in response to questions not complained of, while some were on matters immaterial. A leading question must be prejudicial before error can be predicated upon overruling an objection thereto. O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 899. These assignments do not show error requiring the reversal of this case. Rule 62a for Courts of Civil Appeals (149 S. W. x).

[11] Assignments 22 and 24 are overruled because the statements thereunder fail to show what the testimony was which was introduced, and therefore the assignments show no prejudicial error.

[12] The twenty-fifth assignment complains because a witness was permitted to testify that he stated to another, upon coming out of the polls at precinct No. 3: "By God, if we win this election, it will be nothing but luck."

This was error, but not of such character under rule 62a as to require a reversal of this case.

[13] The twenty-sixth assignment complains because the court refused to permit Show to answer the following question: "Did you hear— Did he (Reuthinger) make any complaint about irregularity in holding the election?" This witness did testify as follows: "Nobody complained of any irregularities at all." Also, speaking of Reuthinger, he said: "I did not hear or see of Jake doing anything." Under the circumstances, no harm resulted by the failure to let the witness answer the question. We do not consider the question complained of in the thirty-first assignment objectionable.

[14] The forty-sixth assignment is directed at the ruling of the court in permitting Arthur Blucher to be asked whether his uncle, R. P. Blucher, had been indicted many times for irregularities in the election being considered. True, the indictments are the best evidence, but this testimony is harmless, in view of the fact that R. P. Blucher himself was permitted to testify, without objection, that he was indicted in 45 or 47 cases regarding said election, and the witness Luter testified, without objection, that Blucher had had been indicted in 44 or 45 cases.

[15] There is no merit in the forty-seventh assignment. This witness testified he heard no one electioneering, but also stated that he heard no conversations taking place in the little room, but, if loud electioneering had taken place, he would have heard it even in such room. No error was committed in refusing to let him state his opinion whether he probably would have heard or noticed electioneering, if any took place.

[16] Assignments 48 to 90, inclusive, complain because testimony of witnesses taken upon the former trial, or upon an examining trial, was introduced in rebuttal. All of these witnesses had testified upon this trial, except Julio Romero, the admission of whose testimony upon an examining trial is complained of by assignment No. 82, and whose testimony upon the former trial of this case was admitted on account of sickness, as complained of by assignment No. 24. There is no sufficient statement under any of these assignments, and none of them show injury. In addition, we find from the statement of facts that appellant had introduced in evidence portions of the former testimony of all those witnesses mentioned in assignments 48 to 57, inclusive, 62, 63, 69, 76, 81, 85, and 90, which fact, in the absence of a showing to the contrary in the brief, we hold would entitle relator to introduce the remainder of the testimony given upon the same occasion as well as statements made upon still another trial regarding the same matter.

[17] We find also from the statement of facts that each of the witnesses mentioned in all of said assignments, except No. 82, testified in the trial of this case to sufficient facts to authorize the court to find that his ballot had been marked for Pease notwithstanding his instructions to mark same for Sutherland, which was the only question upon which the testimony of each of said witnesses was material. The reproduction of their former testimony, where portions thereof had not been introduced by the adverse party, or where statements contradictory of their testimony had not been shown, was error, but such testimony was introduced upon a trial before a court who had heard nearly all of it before and same could not have injured appellant. In fact, we seriously doubt whether the court's attention was called to the fact that some of the testimony was that of witnesses whose testimony had not been attacked by the introduction of portions of their former testimony, or the cross-examination of whom, regarding such testimony, had not made it admissible. The assignments show no injury, as none of the testimony is contained in the statements, and we find that it is not at all probable that the admission of any of said testimony affected the result, and therefore hold that under rule 62a no reversal should take place because of any of these assignments. We do not think there is any merit in assignments 91, 92 and 93, and they are overruled.

[18] There is no merit in assignments 94 and 95, which complain of findings that the ballots of Lehr and Denio, cast in the first voting precinct, were not properly scratched, and it could not be determined for whom they voted. Both of these witnesses testified they were for Pease, but one put a cross after the names of those he wanted to vote against, while the other ran his pen through his favorites' names as an evidence of his desire for their election. Doubtless the latter let his pen run into Sutherland's name, or the court would have counted the ballot for him. The one with the cross after the names could not be counted. The pleadings were sufficient to justify their exclusion upon the recount of the ballots made by the court.

Assignments 96 to 132, inclusive, attack findings of the court to the effect that certain illiterate voters requested Blucher to mark their ballots for Sutherland, and he marked same so that the ballot read for Pease. These findings are attacked either on the ground that they are unsupported by the evidence or are against the great preponderance of the evidence. However, the testimony actually bearing on the issue is not contained in any of the statements, which consist most frequently of excerpts showing the ignorance of the voter. We have examined the record and are of the opinion that the testimony amply sustains each of said findings, and therefore overrule all of said assignments of error.

[19] Assignment 133 raises the issue whether the court was authorized to count the 39 ballots for Sutherland which were directed by illiterate voters to be marked for

him, but which were in fact marked for Pease. In this case Sutherland is elected whether such ballots be counted for him or merely thrown out, and therefore the question is not material, as there can be absolutely no doubt that they cannot be counted for Pease. The question presented is interesting; but, as any utterance we might make in regard thereto would be a mere abstraction, we will leave such question to be decided in a case in which it may be necessary to determine the same.

[20] Assignment 134 complains that the conclusion of fact, to the effect that Blucher electioneered in the polls with certain voters, and succeeded in getting one of them to vote for Pease, is immaterial. The contention must be sustained, but, being immaterial, the finding is not necessary in support of the judgment, and the error in making same is harmless.

Assignment 135 raises the issue whether the 39 mismarked votes should be deducted from Pease's total vote, also whether such votes should be estimated for Sutherland, and whether the total result in the third voting precinct of 163 for Pease and 215 for Sutherland is correct. The proposition thereunder raises only the issue that the 39 votes should have been counted for Pease, which contention cannot be sustained.

What was said relative to assignment 134 applies to assignment 136, to the effect that irregularities and fraud existed in the holding of said election.

[21] Assignments 137 and 138 go to the sufficiency of the evidence to sustain the judgment ousting appellant from office and awarding same to relator. Many of the facts proven have been stated in the former opinion of this court, and will not be repeated here. In precinct No. 2 the officers of election counted Sutherland 26 votes, while, when the court counted the ballots, he had in fact received 112 votes. In precinct No. 3, wherein Blucher says there are about 200 Mexican voters, 39 ballots were found to have been mismarked, and, while Blucher denied having mismarked same, his testimony is very unsatisfactory, and none of the election officers serving with him testified to anything which would contradict the testimony of said witnesses on this material point; besides, one of those officers, Reuthinger, testified to admissions on the part of Blucher to the effect that he had mismarked ballots. Blucher testified that out of about 400 voters in that precinct there were probably 200 Mexicans, but he could not say how many ballots he marked. The testimony of Gussett was mentioned in the former opinion. If it be said that the 39 votes should merely be deducted from Pease and not counted for Sutherland, and that the votes of Julio Romero and Carlos Garcia should not be counted for Sutherland, but for Pease,

because they did not testify upon this trial (see assignments 22 and 24), Sutherland would still have a majority of 9 votes; and even if assignments 91, 92, 93, 94, and 95 were sustained, all of which we think were properly overruled, still Sutherland would have a majority. The evidence fully sustains the judgment.

[22] Assignment No. 139 complains because the court adjudged that relator was entitled, as against appellant, to demand the fees and emoluments of the office of mayor of the city of Corpus Christi. Appellant says there are no pleadings to justify this portion of the judgment. The petition contains an allegation that relator is entitled to hold and enjoy said office for the term of two years, and to receive the emoluments of said office for said term, which were alleged to be of the reasonable value of $3,600 for the two years. The prayer in part was that relator be adjudged entitled to the office of mayor of said city and its franchises and privileges, and there was also a prayer for general relief. The pleadings were sufficient and we overrule the assignment. Gray v. State, 19 Tex. Civ. App. 528, 49 S. W. 699.

Appellee presents a cross-assignment asserting error in the judgment in that the same does not adjudge that Sutherland recover of appellant the proportionate part of the salary of said office from May 6, 1911, to the date of the judgment at the rate of $1,800 per annum. We hold the pleadings are sufficient to entitle relator to this relief. There is no evidence pointed out which shows what the salary of the office amounts to, but by special act of the Thirty-First Legislature, incorporating the city of Corpus Christi, the salary is fixed at $1,800 per annum, payable in equal monthly installments, and said act provides that it shall be deemed a public act, and judicial notice thereof shall be taken in all courts. We sustain this cross-assignment.

The judgment of the lower court will be reformed so as to give relator Sutherland judgment, in addition to the relief given below, against appellant for the sum of $2,241.24, with interest thereon at the rate of 6 per cent. per annum from August 3, 1912, without prejudice to said Sutherland's right to recover for the value of the office after August 3, 1912. State ex rel. Guerguin v. McAllister, 31 S. W. 679.

Reformed and affirmed.