BASKIN, Co. Atty., et al. v. WALSCHAK et al. (No. 321.)

(Court of Civil Appeals of Texas. Beaumont. March 25, 1918.)

1. ELECTIONS ⬦⟿295(1) — FRAUDULENT SUB-STITUTION OF BALLOTS—SUFFICIENCY OF EV-IDENCE.

In an election contest for fraudulent substitution of ballots, where it appears that ballots found in the box accredited to the voters challenging the ballots bear the proper numbers and the unimpeached signature of the presiding judge, and the box containing the ballots appears to have been kept in the custody of the proper officer, and there is no evidence of irregularity in holding the election, in making returns, or of fraud other than the uncorroborated testimony of voters repudiating their ballots,

such testimony is insufficient to support a finding of fraudulent substitution of ballots.

2. ELECTIONS ⬦⟿295(1) — CONTEST — SUFFI-CIENCY OF EVIDENCE.

In suit contesting an election as to whether or not a road district should issue bonds, evidence *held* sufficient to support the findings of the trial judge that 28 voters, returned as voting for the issuance of the bonds and the levy of the tax, in fact voted against the issuance and levy.

3. ELECTIONS ⬦⟿299(4)—CONTEST—BALLOTS—CONSIDERATION OF IRREGULARITIES BY JUDGE.

In an election contest, where undisputed irregularities in the ballots might have been discovered and noted when they were being examined by the judge and counsel in a private room, and counsel for both sides knew that the trial judge had noted the irregularities and taken possession of the ballots showing them, the consideration of such irregularities by the judge, without the ballots being formally again tendered in the courtroom for his judicial consideration, was not reversible error.

4. ELECTIONS ⬦⟿298(2)—CONTEST—FRAUDU-LENT VOTES—SUBTRACTION.

Under Rev. St. 1911, art. 3062, providing that if, on trial of any contested election case, any votes be found to be illegal or fraudulent, the court shall subtract such votes from the poll of the candidate who received them, and decide to which of the contesting parties the office belongs, in suit contesting an election on the issuance of bonds by a road district, where the court found that 28 votes were in fact cast against the bond issue, but fraudulently made to appear for it, it properly subtracted such 28 votes from the total for the issue as returned, and added them to the total against the issue.

5. HIGHWAYS ⬦⟿90 — ROAD DISTRICTS — BONDS—ELECTION—CONTEST—JUDGMENT.

In suit contesting an election as to whether a road district should issue bonds, the court finding that the election failed to carry, because more than one-third of the qualified voters voted against the proposition, the purported road district failed of incorporation, and the court properly ordered that its attempted creation was null and void, thus declaring the true result of the election.

Appeal from District Court, Milam County; E. A. Camp, Special Judge.

Suit by S. Walschak and others against Roy Baskin, County Attorney, and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Morrison & Lewis, of Cameron, for appellants. Etheridge, McCormick & Bromberg, of Dallas, for appellees.

HIGHTOWER, C. J. On the 16th day of November, 1916, an election was held in a certain subdivision of justice's precinct No. 6, Milam county, Tex., designated as road district No. 8, for the purpose of determining whether or not said road district should issue bonds in the sum of $150,000 for the purpose of constructing and maintaining macadamized, graveled, or paved roads in said district, as contemplated and authorized by chapter 2, title 18, of the Revised Civil Statutes of this state. In this election it appears that 253 ballots were cast, and, according to the officers' returns, 180 of these

ballots were cast in favor of, and .73 were cast against, the issuance of such bonds. For the purpose of contesting this election, this suit was filed by Louis Able and 81 other citizens of Milam county, residing in said road district, and the county attorney of said county, Hon. Roy Baskin, as well as the county judge and the commissioners' court of said county, were made parties defendant for the purposes of this contest.

The petition of contestants, as usual in such cases, is quite lengthy, and abounds in many and specific allegations of fraud and irregularities in connection with the holding of said election, and the returns made by the officers thereof; but the main and prominent features of fraud, as charged, are to the effect that a great number of fraudulent and spurious ballots were substituted, by the officers holding said election, for genuine and legal ballots, which had been cast against the issuance of such bonds, and that such spurious and fraudulent ballots were wrongfully and fraudulently counted by the officers holding said election in favor of said bonds. The cause was tried before the district judge, without a jury, and resulted in a finding and judgment to the effect that the main allegations of fraud contained in contestants' petition were true, and that, in fact, many fraudulent and spurious ballots were substituted for genuine and legal ballots, which had been cast against the issuance of such bonds, and that, in fact, the true result of said election was against the issuance of such bonds. In other words, the trial court found and held that 141 legal ballots were cast in favor of the issuance of such bonds, and 96 legal ballots were cast against the issuance of such bonds.

The trial judge filed findings of fact and conclusions of law, portions of which will be mentioned hereinafter in connection with assignments of error challenging same. The first seven assignments of error found in appellants' brief relate to and challenge the action of the trial court in refusing to sustain certain special exceptions interposed by appellants to the petition of appellees, all of which deal with questions of pleading, and all of which we have considered in connection with the allegations of the petition, and, without discussing these assignments in detail, we have concluded that none of them can be sustained, and that none of them raise any new question of pleading, a discussion of which would be in any manner profitable to the bench or profession, and these assignments are overruled without further mention.

We shall now proceed to dispose of appellants' ninth and tenth assignments of error, which are grouped, and which relate to findings of fact Nos. 16 and 18, respectively, made by the trial court. Finding of fact No. 16 was to the effect that the following named 28 persons were each, at the date of said election, qualified resident property-tax paying voters in said road district, and that they voted at said election, and that the returns of the election made by the judges and clerks thereof show that each of said persons voted for the issuance of said bonds and the levy of said tax, when in truth and in fact each of said persons voted against the issuance of said bonds and the levy of said tax, to wit: Henry Miles, J. C. Mauldin, H. E. Fuchs, F. M. Johnson, K. Moore, Louis Able, C. L. Russell, S. M. Cummings, D. C. Campbell, Albert Smith, W. H. Ezell, L. J. Fuchs, J. H. Oliver, E. A. Hamilton, J. C. Lee, G. W. Odom, A. P. Hess, R. T. Patterson, Thomas V. Adams, John Hobson, L. R. Schiller, Bill Locklin, Chas. Richardson, Henry Horstmann, A. L. Robinson, W. E. Coley, S. C. Wilson, H. E. Hannis. Finding of fact No. 18 was to the effect that the 28 ballots cast at said election by said 28 legal voters were not placed in the ballot box as voted, and that said 28 legal ballots were not before the court, but that 28 other spurious ballots for the issuance of the bonds and levy of the tax were substituted therefor, and thereafter, by the judges and clerks of said election, counted in favor of said proposition.

It is contended by appellants that the trial court erred in said conclusion of fact No. 16, in so far as the court found that said 28 persons had voted at said election and cast their votes against the issuance of said bonds, for the reason that there was not sufficient evidence to warrant the court in making such finding, because the ballots found in the box, bearing the numbers thereon corresponding to the names of such persons on the poll list, and bearing the signature of the presiding judge, were found in the proper ballot box, which box was shown to have been kept and maintained in the proper custody of the proper officer, and each of said ballots showed that the persons purporting to have cast the same did vote for said bonds, and because there was no evidence whatever of any irregularity in holding said election, in making the returns thereof, in the custody of the ballot box, or showing any fraud as charged, and because the only evidence impeaching, or tending to impeach, the said ballots, was the oral testimony of the voters, and which oral testimony was not in any way corroborated by any fact or circumstance; and finding of fact No. 18, above set out, is challenged by appellants because, as claimed by them, there was no evidence whatsoever showing or tending to show any of the facts so found, or showing or tending to show that there was any irregularity in holding said election, or in properly counting the ballots cast therein, or of making the proper returns thereof; or of the custody of the ballot boxes, poll lists, or tally sheets, and because the ballots bearing the proper signature of the presiding judge, and being properly numbered correspondingly with the names of said voters,

as appeared upon the poll lists, were offered in evidence, and showed that the said voters had voted for the bonds, and that their said votes had been properly counted and tallied, and that the whole of said election had been properly held, and returns thereof made. The proposition of law submitted under these grouped assignments is as follows:

"In an election contest predicated upon allegations of fraudulent substitution of ballots, where it affirmatively appears that ballots found in the box, accredited to the voters challenging such ballots, bear the proper numbers, and the unimpeached signature of the presiding judge, and the box containing the ballots affirmatively appears to have been kept in the custody of the proper officer since the election, and there is no evidence whatever of any irregularity in holding said election, in making returns thereof, or of any fraud as alleged, other than the testimony of said voters repudiating their ballots, and which testimony was not corroborated by any other fact or circumstance, such testimony is insufficient to support a finding of fraudulent substitution of ballots."

[1] We unhesitatingly agree with this proposition of law announced by appellants, and, if the facts assumed in this proposition find support in the record, this court would have no alternative but to sustain these assignments and reverse the judgment of the trial court in this cause. The 28 persons named in the court's finding of fact No. 16 are shown, without dispute by the record, to have been in every way legally qualified to vote in said election, and it is also shown, without dispute, that each of these voters did in fact vote at said election; and not only is this shown by each such voter himself, but it is also shown by the poll lists and tally sheets. Each of these voters was present and testified on the trial, and each positively testified that he voted against the issuance of the bonds, and that the ballot accredited to him and showing that he voted in favor of the issuance of these bonds was not, in fact, the ballot voted by him, and each unqualifiedly and positively repudiated such ballot accredited to him showing that he voted in favor of such bonds.

Now, appellants do not contend that it is not permissible to show by the verbal testimony of a voter at an election, in a contest of this character, and where fraud is alleged to have been perpetrated by the substitution of spurious and forged ballots, as here, that any ballot found in the box and accredited to such voter was, in fact, not the ballot cast by him; but the real gist of the contention of appellants in this connection is that such verbal testimony of such voters, though admissible, was not sufficient to warrant the finding of the trial court to the effect that these 28 persons in fact voted against the issuance of the bonds, in the absence of evidence corroborative of such testimony, and that such testimony was not corroborated, circumstantially or otherwise. It is true, as contended by appellants, that there was no positive testimony, other than that of these voters themselves, showing that they voted against the issuance of these bonds; and that leaves for our determination whether there were such irregularities shown in connection with the holding of this election as were sufficient to circumstantially corroborate the uncontroverted testimony of these 28 voters.

It is claimed by appellees that such irregularities were conclusively shown. Among such irregularities were the following: Neither of the ballot boxes contained any statement by the presiding judge of the election, or any one else, of the number of mutilated or defaced ballots used in connection with said election, nor the number of ballots defectively printed; neither did said boxes contain any ballot other than those purporting to have been cast. Ballots Nos. 31, 155, and 185 were in duplicate. Ballot No. 17, shown by the poll list, as well as by Thos. Blinka, to have been cast by him, was not found in the boxes; and it was further shown by Blinka that he in fact voted, and voted against the issuance of the bonds. It was further clearly shown that J. A. Tutor voted at the election against the issuance of the bonds, but the boxes contained no ballot purporting to have been cast by him. It was further shown that there were four ballots found in the box of voted ballots which bore no number, and each of these ballots purported to be in favor of the issuance of the bonds, and were so counted by the officers holding the election.

As showing what the law required regarding the number of official ballots to be furnished to the officers holding the election, and what the law required in the way of a statement from the officers holding this election, showing the number of ballots furnished, the number not voted, those defectively printed, those mutilated, etc., and the number returned unvoted, etc., attention is called to R. S. arts. 2973, 2974, 2983, 3008, and 3009. According to the requirements of the above articles, the officers holding this election should have been furnished 1½ times as many official ballots as there were qualified voters in this road district; and one of the boxes used in this election should have contained all defaced and mutilated ballots, but no such ballots were contained in any box used in this election. It was also required that the proper box should have contained a statement, signed by the presiding judge, of the number of ballots received by him, the number of mutilated or defaced ballots that the box contained, and also the number of ballots that were not given to voters, as well as those defectively printed, so that, after adding such numbers, "all ballots delivered to the election officers may be accounted for." As a matter of fact, there was no such statement by the presiding judge, or any officer holding the election, found in any box. In addition to the above-mentioned irregularities and circumstances, it may be further said that the officers who held this election (there was but one voting

place) were all present during the trial of this cause below, and not one of them seems to have taken the witness stand for the purpose of denying or explaining the positive testimony of the above-mentioned 28 voters, or the irregularities above mentioned, and which were relied upon by appellees as corroborative of the testimony of these voters.

[2] Now, the question is: Was the positive and uncontradicted testimony of these 28 voters, save by the election returns themselves, when considered in connection with the irregularities attendant upon the election, as above mentioned, and in connection with the failure on the part of the officers holding such election to testify, sufficient to warrant the conclusion or finding of the trial court to the effect that these 28 legally qualified voters in fact cast their ballots against the issuance of these bonds? After very careful consideration of this question, and being not in the least unmindful of the importance of its proper determination, we have concluded that this court would not be authorized to hold that the findings of the trial judge, challenged by these assignments, were not so wholly without support in the evidence as to warrant this court in setting them aside and holding otherwise, and we therefore overrule appellants' ninth and tenth assignments.

But it is further contended, by appellants' assignments designated "tenth and eleventh assignments of error," that the trial court erred in taking into consideration, in arriving at his findings of fact Nos. 16 and 18, any of the irregularities above mentioned, for the reason, substantially, that there was no evidence introduced before the trial court showing such irregularities. It is the contention of appellants in this connection that when the trial judge concluded, after a prima facie showing was made, that he would be authorized to open the ballot boxes, it was agreed that he and the attorneys for both sides should retire into a private room of the courthouse and examine all ballots of said voters which were put in contest by the pleadings, and that this was the only purpose for which the trial judge and the attorneys retired to this room, and that it was not the purpose and intention to discover or take into consideration irregularities, if any, that might be found or discovered after going into the ballot box, and that the trial judge was not authorized to take into consideration, as a basis for any finding by him, any of the irregularities above mentioned, and that, since no testimony was offered in connection with such supposed irregularities after the trial judge resumed the bench in the courtroom, such irregularities could not be considered by him for any purpose, and could form no proper basis in the evidence or record for any finding or judgment by him.

There is a very lengthy bill of exception in the record, purporting to show what was done and said by and between the trial judge and the attorneys for both sides while the ballots were being examined in this private room, and it appears from this bill that the ballots which were found in duplicate, and those which were found without any number whatever, as above shown, were discovered while such investigation was being made by the trial judge and the attorneys, and that these matters were remarked about at the time, and that such ballots were thereupon taken by the trial judge and pinned together, and this fact noted and agreed to by the attorneys present, and, according to the bill, there was no intimation or objection whatever by counsel for either side that the trial judge was not to consider the condition of these ballots; but it also appears, from appellants' bill, that after the trial judge had resumed the bench, to go on with the trial, no further testimony was offered in connection with these irregularities, and the trial judge, in fact, did consider them in arriving at his findings of fact and conclusions of law, as shown by the record in this case.

[3] Now, the real contention of appellants is that, although these irregularities, which are undisputed, might have been discovered and noted at the time the ballots were being examined, and although counsel for both sides were aware that the trial judge had noted these irregularities, and had taken possession of these ballots showing same, that nevertheless, they could not be considered by him, unless formally again tendered in the courtroom for his judicial consideration. With this contention we cannot agree. It is not contended by appellants that they desired to make any explanation regarding these irregularities, or that they could have done so, and in the motion for new trial filed by appellants in this case, there is no contention whatever that any explanation could be made by them regarding any of these irregularities, or that they desired to attempt to do so, and therefore we are of opinion that, at the most, appellants could only contend that the action of the trial judge in considering these irregularities thus discovered, was itself but an irregularity, and that, since no injury whatever, in fact, is claimed to have been done appellants, or that appellants could have, in any manner, explained or destroyed the effect, whatever it might be, of these irregularities, the action of the trial judge in this particular should not be held sufficient error, if error at all, to reverse this case, and the assignments relating to this matter are overruled.

[4] The eighth assignment, while purporting to challenge the trial court's judgment on a question of fact, we think has the effect of assailing a legal conclusion, and we shall so treat it. The trial judge, after finding as a fact that the 28 voters above named cast their ballots against the issuance of the bonds, and that such ballots, as cast, were in all respects regular and legal ballots, and after finding as a fact that said 28 ballots, as cast, were not put in the box by the offi-

cers of the election, but, on the contrary, that fraudulent, or spurious, or forged ballots were substituted for said 28 legal ballots, and were put in the box, and that these spurious or forged ballots purported to be in favor of the bonds, and were so counted by the officers of the election, held as a matter of law that these 28 spurious or forged ballots or votes should be deducted from the total number of legal votes that were found by the court to have been cast in favor of the bonds, and accordingly, the trial judge did so deduct them. This left, according to the findings and holding of the trial judge, 141 legal votes in favor of the bonds. But the trial judge not only deducted from the total legal vote in favor of the bonds these 28 spurious or forged ballots, but also held that the 28 legal votes or ballots cast by said 28 legal voters, against the issuance of the bonds, should be counted as cast by these voters; and the trial judge thereupon added to the total number of legal votes cast against the issuance of the bonds, which total number was found and held by the court to be 66 votes, the 28 votes which he found as a fact were cast by these 28 voters against the issuance of these bonds, which aggregated 94 votes against the issuance of the bonds, without reference to the votes of Thos. Blinka and J. A. Tutor, also alleged to have been voted against the bonds, and which the trial court found were voted against the bonds.

Now, it is earnestly and strenuously insisted by able counsel for appellants, that even though the trial judge was warranted by the facts in finding that these 28 voters in fact voted against the issuance of the bonds, and even though, for that reason, the trial judge was authorized to deduct from the total number of legal votes cast in favor of the bonds the 28 spurious or forged ballots, by which these 28 legal ballots were substituted, nevertheless the trial judge was clearly in error in holding that these 28 legal votes should be counted against the bonds, as the same were cast by said 28 voters. In the first place, it is contended by appellants, in this connection, that article 3062, R. S., is controlling, and is conclusive of appellants' contention on this point, and that under this article of the statute the court was not authorized, in any event, to do more than subtract such spurious and forged ballots from the poll of the side receiving them, and was not authorized to add such ballots to the opposite side, in accordance with the parol testimony of said voters. And, in the same connection, it is further contended that as said article 3062 expressly limited the court's authority to subtracting the votes of these 28 persons, who repudiated their ballots, from the side for which they were counted, and as it appears, beyond question, that after so doing, and after deducting all other ballots found by the court to have been illegal, from the poll of the side receiving them, that more than two-thirds of the remaining legal ballots

were in favor of the bonds, the trial court should have rendered judgment upholding the election; that there being no issue of fact before it, or to be further found, this court should reverse the trial court, and render such judgment as should have been rendered below.

Article 3062, referred to, reads as follows:

"*Fraudulent Votes Not to be Counted.*—If, upon the trial of any contested election case, any vote or votes be found to be illegal or fraudulent, the court trying the same shall subtract such vote or votes from the poll of the candidate who received the same, and after a full and fair investigation of the evidence, shall decide to which of the contesting parties the office belongs."

Unquestionably the trial judge did precisely what is enjoined by this article, when he deducted or subtracted from the total number of legal votes cast in favor of these bonds, the 28 fraudulent and spurious votes hereinbefore mentioned, because said 28 votes or ballots were clearly illegal and fraudulent. We are unable to see, however, anything in this statute which either expressly or by implication prohibited the trial judge from counting, as a part of the legal vote cast against these bonds, said 28 votes which were cast, as found by him, against the bonds, and were cast by persons who were in all respects legally qualified to vote at this election. Unquestionably, the ballots which were prepared by these legal voters and handed to the judges of this election were neither fraudulent nor illegal votes, but, on the contrary, were legal and valid votes in every respect, and these voters were clearly entitled to have them deposited by the officers of this election in the ballot box, and by them counted as cast. The article of the statute above mentioned, in our opinion, refers only to fraudulent and illegal votes, and provides what shall be done with such votes, that is that they shall be subtracted from the side receiving them; but there is nothing in the article which, in our opinion, could be reasonably construed to prohibit the trial judge from counting 28 legal votes, cast by as many legally authorized voters, for the side for which they were, in fact, cast in this instance.

Appellants, in this connection, also rely upon the cases of Savage v. Umphries, 118 S. W. 902, Pease v. State, 155 S. W. 662, and Owens v. Jennett, 64 Tex. 509. After a careful consideration of each of these cases, we have reached the conclusion that neither of them is authority for the contention here made by appellants; but, on the contrary, we are inclined to think that Owens v. Jennett is, by implication, authority against the contention here made by appellants. While the authorities cited by appellants do not, in our opinion, sustain their contention in this case, we wish to say that we fully appreciate the importance and gravity of the question here under consideration, and have given it such thought as its importance demands, con-

sistent with the time this court has had for its consideration. It has been said by the courts of other jurisdictions that a forged ballot is one changed after being cast, or one substituted for the one cast, and the general rule, that it is competent to prove any writing to be a forgery, applies, it seems, to such a ballot. Kreitz v. Behrensmeyer, 125 Ill. 141, 17 N. E. 232, 8 Am. St. Rep. 349. It has also been held in other jurisdictions that it is competent, upon a recount of ballots, to prove that any particular one has been forged, and that such ballot should be corrected and admitted as evidence of the vote as cast. See Enc. of Ev. vol. 5, p. 62, and cases there cited. See, also, People v. Pease, 27 N. Y. 45, 62, 84 Am. Dec. 242; State v. Owens, 63 Tex. 261.

After careful consideration of this question, and in the light of such authority as we have been able to find upon it, we have concluded that the trial judge was not in error in counting the votes of these 28 legal voters against the issuance of these bonds, as they were found by the trial judge to have been cast, and we therefore overrule this assignment of error.

[5] By the twelfth assignment of error it is claimed that the trial judge erred in that portion of his judgment, which reads as follows:

"It is ordered and decreed by the court that Buckholts road district No. 8 of Milam county, and the attempted creation thereof, be and the same is hereby held to be null and void, and not a body politic or corporate in law, and that said purported Buckholts road district No. 8 be and the same is hereby restrained from exercising or attempting to exercise any act, right, or privilege or claim any immunity as a body politic or corporate in law, and that the clerk of this court deliver to said commissioners' court a certified copy of this judgment."

The proposition in this connection is that when a road district has been lawfully created, and an election ordered, to determine whether or not bonds of such district shall be issued, and a tax levied for the redemption thereof, and which said election results in favor of the bonds and tax, and in a contest the election is set aside, but there is no evidence as to illegality of the creation of the district, the court has no authority to declare the road district void.

The trial court having found that the election in question failed to carry, for the reason that more than one-third of the qualified voters voting at the same voted against the proposition there to be considered, the finding and holding of the trial court being upheld by this court, it is clear that this purported road district failed of incorporation, or had any legal existence or status of any character. This election was not set aside by the judgment of the trial court; but on the contrary, its true result was ascertained and declared, and that result was that the proposition had failed to carry, and we are unable to understand how this claimed road district now has any legal existence or status whatever. We do not construe that part of the judgment of the court complained of as forbidding the voters in that or any other designated subdivision of Milam county from petitioning the commissioners' court to have another bond election, and in order to do so such voters would only be required to comply with the statute governing such matters. We do not care to discuss this matter further, and overrule this assignment.

What we have said above disposes of all assignments of error, and believing, as we do, that none of them should be sustained, they are all overruled, and the judgment of the trial court is in all things affirmed.