## MASSACHUSETTS BONDING & INS. CO. v. LE MAY.

### No. 12273.

Court of Civil Appeals of Texas. Fort Worth. March 8, 1930.

Rehearing Denied April 26, 1930.

260

George K. Holland, of Dallas, for appellant.

Clyde Milliken, of Fort Worth, for appellee.

DUNKLIN, J.

The Massachusetts Bonding & Insurance Company issued to Edward R. Le May a policy of insurance upon which this suit was instituted against the insurer by Mrs. Maude Le May, surviving wife of Edward R. Le May at the time of his death, and, from a judgment rendered in her favor, the defendant has prosecuted this appeal.

The trial was before the court without a jury, and the terms and provisions of the policy made the basis, of the recovery and which were relied on by the plaintiff in her pleadings for relief, are set out in the court's findings of fact and conclusions of law, and are as follows:

"Findings of Fact:

"1. I find that on December 6, 1922, defendant, Massachusetts Bonding & Insurance Company, a life, health and accident company, issued and delivered to Edward R. LeMay, its certain policy of insurance No. 2218672, wherein said company insured the said Edward R. LeMay against:

"(1) the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means (excluding suicide, sane or insane) said bodily injury so sustained being hereinafter referred to as 'such injury' and

"(2) disability resulting from illness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for thirty days from its date, hereinafter referred to as 'such illness,' as follows:

" 'Principal sum, Nine Hundred Dollars.

" 'Monthly accident indemnity, Ninety dollars.

" 'Monthly illness indemnity, Ninety dollars.'

"2. That said policy further contained the following provisions:

" 'Accident Benefits: Specific Losses.

" 'Part II. Sec. (a) If any one of the following specific losses shall result solely from 'such injury' within ninety days from the time of the accident, the Company will pay: For Loss of Life The Principal Sum.

" 'Part V. If 'such injury' to the insured shall necessitate one or more of the surgical operations named below, the company will pay in addition to any indemnity otherwise payable, the largest amount specified for any one of the operations performed; provided, that not more than one such indemnity shall be payable as the result of any one accident. The amounts specified below are payable only in case the Monthly Accident Indemnity is $100; if such indemnity is greater or less than $100, then the amount to be paid shall be increased or reduced proportionately.

" 'Skull Trephining............. $150.00

" '17. If the insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the company then in that case the Company shall be liable only for such portion. of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined.'

"3. That the application signed by the said Edward R. LeMay on which said policy was issued contained the following statements and representations:

" '10. No application ever made by me for life, accident or health insurance has been declined, nor any such policy of insurance cancelled or renewal refused by any company, association or society, except as follows: No exceptions.

" 'I understand and agree, that I have made the foregoing statements as representations to induce the issue of the policy and to that end I agree that if any one or more of them be false all right to recover under said policy shall be forfeited to the Company if such false statement was made with actual intent to deceive or if it materially affects either the acceptance of the risk or the hazard assumed by the Company; that the insurance hereby applied for will not be in force until the delivery of the policy to me while I am in good health and free from all injury; and that the agents or solicitors of the company are not authorized to extend credit or waive or modify any of the terms or conditions hereof.'

"4. I find that the original beneficiary in said policy was Mrs. Virginia Le May, mother of the insured, but that on December 13, 1924, the insured, by notice in writing to defendant changed the beneficiary in said policy to plaintiff, as wife of insured, which change of beneficiary was accepted by defendant and noted on its records and on the policy.

"5. I find that on October 29, 1927, and during the life of said policy, the said Edward R. Le May sustained a bodily injury solely through external, violent and accidental means, in the following manner: On the said date the said Edward R. Le May was engaged in the automobile repair business and while he was adjusting the carburetor on an automobile, the right side of his head accidentally came in contact with or in close

proximity to the ignition coil of said automobile, his left hand being in contact with the said carburetor and by reason thereof, an electric circuit was formed with that portion of his body between his right temple and left hand included therein and the electric current was caused to pass into his right temple through his brain and out at his left hand; that as a result of the passage of said current through his head and brain, certain blood vessels therein were ruptured causing the formation of two blood clots and a necrosis or burned area on his brain; that on November 4, 1927 (and within ninety days from the time of said accident) the death of the said Edward R. Le May resulted solely from such injury.

"6. I find that said injury to the said Edward R. Le May necessitated the surgical operation of skull trephining and that said operation was performed on the said Edward R. Le May prior to his death on November 4, 1927.

"7. I find that plaintiff, within the time specified in the policy, gave the required notice to defendant, of the injury and death of the said Edward R. Le May.

"8. I find that on February 2nd, 1928, plaintiff made a demand in writing to defendant for the amount due on said policy and that defendant failed and refused to pay same within thirty days after the receipt of such demand.

"9. I find that it was necessary for plaintiff to employ an attorney to prosecute this suit for her and that she agreed to pay said attorney a reasonable fee therefor and that a reasonable fee for the services of said attorney is the sum of $200.00.

"10. I find that by reason of defendant's failure and refusal to pay to plaintiff the amount due on said policy, plaintiff has been damaged and is entitled to interest on said amount from February 2, 1928, to March 18, 1929, the date of the judgment herein, at the rate of six per cent per annum.

"11. I find that the policy involved in this suit was a renewal of a former policy between the parties which had been in force at least as far back as the year 1917, and that at the time of the first application the representation of insured that he had not been declined for other insurance was true.

"12. I find that at the time of the insurance and delivery of the policy involved in this suit to the said Edward R. Le May he was in good health and free from all injury.

"13. I find that the condition of the health of the said Edward R. Le May was not material and that it did not affect either the acceptance of the risk or the hazard assumed by the company.

"14. I find that the condition of the health of the said Edward R. Le May did not actually cause or contribute to the injury or death of the said Edward R. Le May.

"15. I further find that the defendant did not at any time give notice to the insured or to the beneficiary in said policy that it refused to be bound by the contract of said policy.

"16. The evidence offered being incompetent and insufficient to show that the assured carried other insurance covering the same loss, I find that the insured did not carry other insurance covering the same loss.

"Conclusion of Law.

"1. I conclude that under the evidence plaintiff is entitled to recover the principal sum of $900.00, surgical operation fee in the sum of $135.00, penalty in the sum of $124.20, interest at the rate of 6 per cent per annum from February 2, 1927, to the date of the judgment, in the sum of $75.34, and attorney's fees in the sum of $200.00.

"2. I conclude that the evidence offered to show other insurance covering the same loss is incompetent and that incompetent evidence, though not objected to, cannot form the basis of an adjudication.

"To all of which findings and conclusions defendant excepts."

Appellant has presented fifty-six propositions based on forty-six assignments of error, all of which have been duly considered, but the same will not be discussed seriatim, since to do so would unduly lengthen this opinion. But the same will be grouped and the material questions presented will be thus disposed of.

According to the allegations of plaintiff's petition, while Edward R. Le May was engaged in repairing an automobile and was adjusting the carburetor thereon and while his left hand was in contact with the carburetor, his head accidentally came in contact with or sufficiently near, the ignition coil of the machine as to cause an electric circuit to be completed from the carburetor to the ignition coil, and that, by reason thereof, an electric current was caused to pass through his head and brain, resulting in necrosis of the brain and a rupture of a blood vessel in the brain; and, from the injury so received, death resulted to Edward R. Le May.

By numerous propositions and assignments, appellant insists that the evidence was wholly insufficient to support the court's finding that Edward R. Le May came to his death in the manner and from the cause alleged in plaintiff's petition. In support of those allegations, plaintiff introduced the depositions of Mrs. Maude Le May, who testified that, on the occasion in controversy when her husband received the electric shock, he was working on a car owned by Mr. T. H. Fort,

which was parked against the curb, and that she was working in the office immediately opposite him and saw him lean his head down and come in contact with the carburetor while adjusting the machinery. She further testified that the motor was running at the time and the right side of his forehead or temple came in contact with the ignition coil on the machine. She further testified that immediately after his head came in contact with the ignition coil he rushed into the office and rubbed some vaseline on his hand, remarking at the time, "Do not worry about my hand, it's my head that hurts." She said at that time she saw a burnt spot on his right temple about the size of a half dollar; that it was red at first and later turned a dark hue, which continued to be visible for several days; that she also saw a burnt spot on his right hand.

T. H. Fort, the owner of the automobile, testified that he was standing a few feet from Edward R. Le May at the time he was working on the car, and that at the time the injury occurred Mr. Le May was adjusting the carburetor on the machine while the motor was running; that Le May leaned over the car while doing the work, with his left hand under the hood, and, while adjusting the carburetor, with the motor racing, "he jumped up right quick, threw his hand to his head, and asked me if I got a shock"; that the ignition coil was on the left-hand side of the motor under the hood in front of the dashboard; that witness could not see exactly the location of Le May's head or how close it was to the dashboard, but that he was near the coil. He further testified that, as Le May jumped up, he raised his hand to his head and asked witness if he got that shock, saying, "Well I did, and if you had been standing where I was you would have gotten a good one." He further testified that he then noticed a small red place on Le May's right temple, and either a skinned or burnt place on his right hand. There was further evidence that shortly thereafter Edward R. Le May was carried to the hospital, where he was treated by physicians; and an autopsy after death disclosed two blood clots on the left side of the brain and necrosis of tissues connected therewith. He died six days after the injury; and, according to testimony introduced, his death was caused by two blood clots or such necrosis in the tissues contiguous to the brain, or by both of those conditions.

■ Plaintiff introduced several witnesses who, after qualifying as experts in such matters, testified, in substance, that it was possible for Le May to have received a shock to his head under the circumstances and in the manner related by Mrs. Le May and T. H. Fort. The evidence referred to above, in connection with other testimony bearing on the same issue, was sufficient to support the court's finding that Le May received the injury in the manner and from the causes alleged in plaintiff's petition and stipulated in the policy of insurance.

■ George M. Ogle, one of plaintiff's witnesses who testified as an expert relative to the probable fatal effect of an electric current received through the brain, testified by deposition taken in Kings county, N. Y. He testified that after his graduation from college he had been a consulting engineer of the Edison Electric Company of Boston, general engineer of the Westinghouse Manufacturing Company, of Pittsburg, chief electrical engineer of the North Atlantic United States Shipping Board, and electrical engineer in numerous other corporations of a similar nature. When the deposition of Ogle was offered, the defendant objected on the ground that it appeared that the interrogatories had been forwarded to the witness by plaintiff's counsel rather than to an authorized officer to take the deposition, that plaintiff through her counsel had entered into an agreement with the witness to pay him a consideration of $125 to answer the interrogatories, and that the witness had failed to attach to his deposition a copy of certain instruments requested by the defendant. We find no error in the court's action in overruling those objections, and we know of no statute or decision forbidding the delivery of the interrogatories to the witness to be by him delivered to the notary who takes the deposition. While the fact that the witness was paid a consideration for giving his expert opinions in answer to the interrogatories might be considered by the court in weighing his testimony, yet we know of no rule that his depositions were thereby rendered inadmissible, especially in the absence of any proof that the promise of payment of such compensation was conditioned upon an agreement of the witness to give testimony favorable to the plaintiff. In the absence of any showing in the bill of exceptions as to what document the witness failed to attach to his depositions, the ruling of the court in overruling defendant's objection to the depositions, based on such failure, presents no reversible error, at all events.

■ A further objection to some of the answers given by Ogle in his depositions, that the interrogatories which he was attempting to answer were leading, presents no reversible error.

Divers and sundry other objections to numerous questions propounded to different witnesses who gave their opinions as experts were made on the ground that such questions called for a mere conclusion of the witnesses rather than facts; and other objections were made upon the ground that some of the questions were based upon unwarranted hypotheses. After due consideration, we deem it sufficient to say that those objections present no reversible error. Numerous assignments

have been presented, urging the contentions that some of the witnesses giving expert testimony, referred to above, were not properly qualified to express their opinions, but those assignments are overruled as being without merit.

■■ And, with reference to all of the assignments discussed above relative to the admission of testimony we deem it proper to add that, when a case is tried without a jury, a reversal will not follow from the admission of improper evidence if there is sufficient competent proof to support it, since, in the absence of a showing to the contrary, it will be presumed that the findings of the judge were based on proper evidence only, if same be found in the record, and especially if the improper evidence admitted be of minor import. Melton v. Cobb, 21 Tex. 539; Smith v. Hughes, 23 Tex. 248; Pease v. State (Tex. Civ. App.) 155 S. W. 657; Creager v. Douglass, 77 Tex. 484, 14 S. W. 150; Zetsche v. Lawler (Tex. Civ. App.) 25 S.W.(2d) 907.

■■ The policy sued on contained this provision: "If the insured shall carry with another company, corporation or society other insurance covering the same loss without giving written notice to the company, then in that case the Company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

That provision of the policy was pleaded as a special defense by the defendant, in connection with allegations that Edward R. Le May carried another policy of insurance with the Reliance Insurance Company in the sum of $5,000 without giving any notice to the present company of such insurance, and that therefore in no event could the defendant be held liable to the plaintiff for an amount exceeding the portion of the loss sustained by plaintiff by reason of the death of her husband as indemnity claimed in this suit bears to the total of the same indemnity covered by both policies. In support of that defense, the defendant introduced a document purporting on its face to be part of a purported pleading filed in the name of Mrs. Maude Le May in the district court of Tarrant county seeking to recover of the Reliance Insurance Company $5,000 for the death of her deceased husband, Edward R. Le May, by virtue of an alleged contract of insurance issued by the Reliance Insurance Company to Edward R. Le May covering the same risks and upon the same conditions as the policy in this suit, and payable to Mrs. Maude Le May upon his death, which it was alleged occurred in the same manner as shown in the case at bar. But that document does not purport to be signed by Mrs. Maude Le May or by any attorney or agent for her, or by any one else, and, in the absence of the signature of herself or of some attorney for her, it cannot be considered an abandoned pleading, since article 1997, Rev. Statutes, provides that a pleading must be signed by the party for whom it is filed, or by his or her duly authorized attorney. It cannot be treated as hearsay evidence, which necessarily must be given upon oath of some witness testifying to it as a statement made by some one else. As said in 10 R. C. L. p. 1094: "As a preliminary to the introduction of private writings in evidence, their execution must be proved and their authenticity established. A writing of itself is not evidence; it must be accompanied by proof of some sort."

That document, with proof that at the time of the issuance of the policy in this suit appellant had no notice of any other policy covering the same risks, was the only evidence based on concurrent insurance. And, although that document was introduced in evidence without objection from plaintiff in the case, it was wholly incompetent as evidence, and could not be given any probative effect to sustain the alleged defense that plaintiff's recovery in this suit should, at all events, be on a pro rata basis with the other policy mentioned in the document. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Michel v. Michel (Tex. Civ. App.) 115 S. W. 358.

■ We conclude further that all other findings of the trial court not discussed above have sufficient support in the evidence adduced; and in this connection we will add that the testimony of a physician that prior to his injury Le May had been afflicted with enlargement of the heart for which that physician had treated him was insufficient of itself to require this court to set aside the trial court's finding that Le May was in good health when the policy was issued, since, according to the testimony of the same physician, Le May kept continuously at his work, notwithstanding that condition of his heart, and since plaintiff, his wife, testified that she was married to Le May in November, 1924, and lived with him from that time until his death, and further testified as follows: "Prior to October 29, 1927, the date on which the accident happened, Mr. Le May was in perfect health during the time I had known him and had lived with him. Mr. Le May was approximately six feet two inches in height and weighed 180 pounds. He was a strong and healthy man and never had any sickness during the time that I knew him."

Furthermore, plaintiff's special exception to the plea of misrepresentation in the application for insurance, to the effect that the insured was then in good health, was sustained by the trial court, and appellant has assigned no error to that ruling.

Appellant is in no position to impeach the verity of the statement of facts approved by

the trial judge, upon the contention that certain documents were omitted therefrom and others were improperly included, in view of the statute which, in effect, makes the certificate of the trial judge approving the statement of facts, conclusive as against an original attack thereon in this court for the first time.

All other assignments not discussed above have been duly considered and, without further discussion, are overruled as presenting no reversible error.

For the reasons stated, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellant insists that the record does not support the recital in the original opinion to the effect that Mrs. Le May testified that she "saw him lean his head down and come in contact with the carburetor while adjusting the machinery," and that at the time Edward R. Le May went into the shop after his alleged injury "she said at that time she saw a burnt spot on his right temple."

We have again examined the statement of facts, and the following is the verbatim testimony of Mrs. Le May with reference to the alleged inaccuracies in our former opinion:

"Mr. Le May received an injury on October 29, 1927. About four o'clock in the afternoon on that day, Mr. Le May was working on an automobile owned by Mr. T. H. Fort, and the automobile was parked at the curb in front of our repair shop at 1412 Commerce Street at the time that Mr. Le May was working on it, and at the time he was injured Mr. Le May was adjusting the carburetor on Mr. Fort's automobile. While he was adjusting the carburetor, the motor was running, and in some manner, as Mr. Le May leaned over the car, the right side of his forehead or temple came in contact with the ignition coil on the automobile. The automobile on which Mr. Le May was working was parked at 1412 Commerce Street on the west side of the street, the automobile being headed south. As he worked on the automobile, Mr. Le May was on the left side of the car bending over it. At this time I was inside of our repair shop, sitting at a desk in front of a plate glass window just inside from where the car was parked.

"I saw a burned spot on Mr. Le May's temple about the size of a half a dollar; this spot was red at first, and later turned to a dark hue and continued to be visible for two or three days after the accident. I also saw a burned spot on Mr. Le May's left hand. Mr. Le May made a remark to me immediately after the accident with reference to his injury. Practically no time elapsed between the time and the making of this remark, as he rushed into the repair shop immediately after the accident and rubbed some cup grease or vaseline on his hand, and while doing so made the remark to me. The remark that he made to me was 'Do not worry about my hand; it is my head that hurts.'"

It is further insisted that the witness T. H. Fort did not testify, as indicated in the original opinion, that he (the witness) "noticed a small red place on Le May's right temple" at the time Le May jumped back from the automobile and asked the witness if he had received a shock. It is insisted that the statement of the witness was to the effect that he observed a red spot on Le May's temple when he followed him into the shop, but that he did not make that observation before he went into the shop, and we find that that contention is sustained by the record.

The inaccuracies pointed out in the recitals in the original opinion we deem wholly immaterial, but we make these corrections in view of the insistence of appellant's counsel to the contrary.

The motion for rehearing is overruled.